HEIDELBERG BUILDING, LLC v DEPARTMENT OF TREASURY

Docket No. 264038. Submitted January 4, 2006, at Lansing. Decided February 21, 2006, at 9:05 a.m. Leave to appeal sought.

Heidelberg Building, L.L.C., on behalf of itself and all others similarly situated, brought an action in the Court of Claims against the Department of Treasury, alleging in part that MCL 211.905(1), which concerns the collection of state education taxes, violates equal protection. The court, Joyce Draganchuk, J., certified the action as a class action. The plaintiffs moved for partial summary disposition under MCR 2.116(C)(10), and the defendant asked the court to grant it summary disposition under MCR 2.116(I)(2). The court granted summary disposition to the defendant, concluding that no equal protection violation existed. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court did not err by granting summary disposition to the defendant. MCL 211.905(1) provides that state education taxes collected with city taxes are subject to the same penalties for late payment as other taxes that are collected simultaneously. Thus, two taxpayers in two different municipalities who are equally late in paying the same amount of tax may owe a different total amount of tax, interest, and penalties. Because the statute involves taxation and does not involve a suspect class, it receives rational-basis review to determine whether the resultant classifications bear a rational relationship to a legitimate state purpose. A rational basis for legislation exists when any set of facts can be reasonably conceived to justify the discrimination. While the statute does not state the purpose of effectively allowing different municipalities to determine for themselves the penalties for late tax payments, several reasonably conceivable legislative purposes justify the discrimination. These include (1) ease of administration, such as allowing jurisdictions to avoid computations using different penalties and interest rates for each separately levied tax, (2) greater acceptance of the legitimacy of the penalties and interest rates because they were set by local lawmakers who are closer to the aggrieved property owners, (3) greater ability to promote timely tax payments by local governments, and (4) the

perceived lack of a reason to impose the same penalties on communities with different cycles of incomes through the year.

2. The challenged statutory scheme did not impermissibly delegate lawmaking on a state matter to local legislative bodies. MCL 211.107(1) provides that statewide rules for imposing interest, penalties, and collection or administration fees are applicable to cities and villages if not inconsistent with the charter or ordinances of those municipalities. Thus, rather than vesting discretion in local legislative bodies to waive penalties and interest already accrued, the statutory scheme only allows local government systems in place for processing penalties and interest on late tax payments to be applied to late state education tax payments as well. If a conflict exists between MCL 211.107(1) and a city charter, the charter governs.

Affirmed.

1. TAXATION — STATE EDUCATION TAXES — PENALTIES FOR LATE PAYMENTS — EQUAL PROTECTION.

The section of the State Education Tax Act providing that state education taxes collected with city taxes are subject to the same penalties, interest, and collection charges as city taxes does not violate equal protection (MCL 211.905[1]).

2. TAXATION — GENERAL PROPERTY TAX ACT — TAX COLLECTION, FEES, AND PENALTIES — CITY CHARTERS.

The provisions of a city charter govern to the extent that they conflict with the provision of the General Property Tax Act concerning the amount and imposition of interest, penalties, and collection or administration fees, tax collection procedures, and tax lien enforcement (MCL 211.107[1]).

*Thomas G. Cecil, PLLC* (by *Thomas G. Cecil*), and *Bodman LLP* (by *James J. Walsh*) for the plaintiffs.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ross H. Bishop*, Assistant Attorney General, for the defendant.

Before: BANDSTRA, P.J., and FITZGERALD and WHITE, JJ.

PER CURIAM. Plaintiffs appeal as of right the Court of Claims order denying their motion for summary dispo-

sition and granting summary disposition to defendant in this class action alleging that MCL 211.905(1) violates equal protection. We affirm.

Plaintiffs challenge a provision of the State Education Tax Act (SETA), MCL 211.901 *et seq.*, that specifies that state education taxes (SETs) collected with city taxes are subject to the same penalties for late payment as other late taxes collected simultaneously.[1] Thus, two taxpayers in two different municipalities who are equally late in paying the same amount of tax may owe a different total amount of tax, interest, and penalties. Plaintiffs allege that this practice violates equal protection: "[S]ection 211.905(1) and its predecessor created classes of similarly situated taxpayers who are treated differently solely because of the location of their taxable property."

---

[1] MCL 211.905(1), as amended by 2002 PA 244, effective April 30, 2002, provides as follows:

Beginning in 1994 through 2002, the tax levied under this act shall be collected and distributed by the local tax collecting unit under the provisions of the general property tax act at the same time as other taxes levied by the local school district for school operating purposes. However, in each year after 1993 if a local school district is not going to levy a tax in that summer but levied a tax in the summer of 1993, and the local tax collecting unit in which the local school district is located is collecting a tax for any taxing unit in that summer, the local tax collecting unit shall collect within that local school district 1/2 of the tax under this act in that summer. The tax levied under this act that is collected by a city shall become a lien against the property on which assessed in the same manner and on the same date as city taxes or, if the city approves the collection of the tax levied under this act on a date other than the date it collects the city taxes, on July 1. *The tax levied under this act that is collected with the city taxes shall be subject to the same penalties, interest, and collection charges as city taxes* and, except as otherwise provided in subsection (3), shall be returned as delinquent to the county treasurer in the same manner and with the same interest, penalties, and fees as city taxes, except as provided in section 89a of the general property tax act, 1893 PA 206, MCL 211.89a. [Emphasis added.]

Plaintiff Heidelberg Building, L.L.C., sought class certification "of all persons or entities from whom the City of Ann Arbor or any other city, township or county or Treasury collected penalties, interest and collection charges for State Education Tax payments," and asked the court to find that any penalties, interest, and collection charges imposed by local tax-collecting authorities (cities, townships, etc.) "are unlawful and that Section 211.905(1) and its predecessor are, in part, unconstitutional."[2] The court certified the class as follows:

> (1). All persons or entities from whom the City of Ann Arbor and any other Michigan city, township, county or the Michigan Department of Treasury collected penalties and interest for State Education Tax assessments during the period of time beginning three years prior to the filing of the complaint in this matter and concluding on the effective date of the April 30, 2002 amendment to MCL 211.905(1), which provided that the State Education Tax "shall be subject to the same penalties, interest, and collection charges as city taxes."

> (2). All persons or entities from whom the City of Ann Arbor and any other Michigan city, township, county or the Michigan Department of Treasury collected penalties and interest for State Education Tax assessments during the period of time beginning three years prior to the filing of the complaint in this matter and concluding with the date of entry of judgment in this matter.

Plaintiffs moved for partial summary disposition under MCR 2.116(C)(10), and defendant asked the court to grant it summary disposition under MCR 2.116(I)(2). The court granted summary disposition to defendant, noting:

---

[2] Plaintiffs' complaint also included counts for money had and received (requesting the return of the unlawful penalties) and unjust enrichment. Because plaintiffs only appeal the constitutionality of the penalty provision, these counts are not considered here.

The State Education Tax Act in Section 5 requires local units of government to collect and distribute the state education tax under the provisions of the General Property Tax Act and subject to the same penalty, interest, and collection charges as city taxes. The General Property Tax Act in Section 107 [MCL 211.107] provides that the interest, penalty, and collection fees of the Act are applicable to cities and villages if not inconsistent with their charters or ordinance.[3]

The plaintiff claims that this statutory scheme, if you will, violates the equal protection clause of the Fourteenth Amendment. There is no question here that states are subject to the equal protection clause of the Fourteenth Amendment when enacting tax legislation. However, tax statutes are presumed to be constitutional.

The plaintiff has briefed this matter well and presented the Court with a number of cases from other jurisdictions that he has persuasively presented. However, I cannot find any of those cases that are analogous to exactly the situation that we have here.

Here, the Court has to engage in an analysis that asks whether the enactments, classifications, are based on natural distinguishing characteristics and whether they bear a reasonable relationship to the object of the legislation.

In addition, the Court has to inquire as to whether all persons of the same class are included and affected alike, or are immunity and privileges extended to an arbitrary or unreasonable class while denied to others of like kind.

The assessment and imposition of this tax is a matter of statewide concern and it's assessed and imposed by the State. The collection of the tax, however, has been delegated to and is a matter of local responsibility and

---

[3] MCL 211.107(1) states in part, "The requirements of this act relating to the amount and imposition of interest, penalties, collection or administration fees, the procedures for collection of taxes, and the enforcement of tax liens are applicable to all cities and villages if not inconsistent with their respective charters or an ordinance enacted pursuant to their respective charters."

concern. If the State imposed and collected different levels of interest based solely on location, I believe there would be a stronger argument for a violation of equal protection. But here the State delegated collection authority to the cities and allowed the cities to set the interest rate for late payments. This classifies taxpayers according to the jurisdiction of the collecting authority, which is a naturally distinguishing characteristic. I believe it bears a reasonable relationship to the object of the legislation because it recognizes the autonomy of local units to control matters of local authority and concern.

While the assessment of the taxes is a state matter, the collection, as I indicated, is a local matter. All persons of the class are included and affected alike.

I do not see a violation of the equal protection clause or the Fourteenth Amendment. There being no factual matters or disputes in this case, judgment should be granted to the defendant under MCR 2.116(I)(2).

This appeal ensued.

Whether MCL 211.905(1) of the SETA violates the state or the federal equal protection clauses, which are coextensive, presents a question of law that this Court reviews de novo. *TIG Ins Co, Inc v Dep't of Treasury*, 464 Mich 548, 557; 629 NW2d 402 (2001).

The essence of the Equal Protection Clauses is that the government not treat persons differently on account of certain, largely innate, characteristics that do not justify disparate treatment. *Miller v Johnson*, 515 US 900, 919; 115 S Ct 2475; 132 L Ed 2d 762 (1995); *El Souri v Dep't of Social Services*, 429 Mich 203, 207; 414 NW2d 679 (1987). Conversely, the Equal Protection Clauses do not prohibit disparate treatment with respect to individuals on account of other, presumably more genuinely differentiating, characteristics. *Puget Sound Power & Light Co v City of Seattle*, 291 US 619; 54 S Ct 542; 78 L Ed 1025 (1934). Moreover,

even where the Equal Protection Clauses are implicated, they do not go so far as to prohibit the state from distinguishing between persons, but merely require that "the distinctions that are made not be arbitrary or invidious." *Avery v Midland Co, Texas*, 390 US 474, 484; 88 S Ct 1114; 20 L Ed 2d 45 (1968).

When a party raises a viable equal protection challenge, the court is required to apply one of three traditional levels of review, depending on the nature of the alleged classification. The highest level of review, or "strict scrutiny," is invoked where the law results in classifications based on "suspect" factors such as race, national origin, or ethnicity, none of which are implicated in this case. *Plyler v Doe*, 457 US 202, 216-217; 102 S Ct 2382; 72 L Ed 2d 786 (1982). Absent the implication of these highly suspect categories, an equal protection challenge requires either rational-basis review or an intermediate, "heightened scrutiny" review.

## A. WHERE RATIONAL BASIS APPLIES

Under rational-basis review, courts will uphold legislation as long as that legislation is rationally related to a legitimate government purpose. *Dandridge v Williams*, 397 US 471, 485; 90 S Ct 1153; 25 L Ed 2d 491 (1970). To prevail under this highly deferential standard of review, a challenger must show that the legislation is "arbitrary and wholly unrelated in a rational way to the objective of the statute." *Smith v Employment Security Comm*, 410 Mich 231, 271; 301 NW2d 285 (1981). A classification reviewed on this basis passes constitutional muster if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable. *Shavers v Attorney General*, 402 Mich 554, 613-614; 267 NW2d 72 (1978). Rational-basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with "mathematical nicety," or even whether it results in some inequity when put into practice. *O'Donnell v State Farm Mut Automobile Ins Co*,

404 Mich 524, 542; 273 NW2d 829 (1979). Rather, the statute is presumed constitutional, and the party challenging it bears a heavy burden of rebutting that presumption. *Shavers, supra.* [*Crego v Coleman,* 463 Mich 248, 258-260; 615 NW2d 218 (2000).]

"Absent an imposition on a fundamental right or a suspect class, tax legislation is reviewed to determine whether its classifications bear a rational relation to a legitimate state purpose." *TIG,* 464 Mich 550-551. "A rational basis for legislation exists when any set of facts can be reasonably conceived to justify the discrimination." *Kellogg Co v Dep't of Treasury,* 204 Mich App 489, 496; 516 NW2d 108 (1994).

Although the challenged statute does not state the purpose of allowing various municipalities within the state to determine the penalties for late tax payments for themselves, several purposes are conceivable, including ease of administration. The Legislature could have also decided that permitting each town or city to determine its own penalties and interest rates would promote greater acceptance of their legitimacy because aggrieved property owners would be closer to the lawmakers who set the penalties. The Legislature conceivably could have concluded that, in a state that depends on local assessment and collection for property-based taxes, there was a benefit in allowing each jurisdiction to use the same schedule of penalties and interest that it applies to other late taxes, rather than having to compute penalties and interest at different rates for each separately levied tax. The Legislature also conceivably could have found that local governments would be better able to know how to promote timely tax payments and that there was no reason to impose the same penalties on predominantly agricultural communities— where income tends to vary more widely through the year—as on communities dominated by service or

manufacturing industries that pay salaries year round. While these are speculative rationales, each one would independently satisfy the test of "any set of facts [that] can be reasonably conceived to justify the discrimination." *Id.*

Regarding plaintiffs' argument that the statutory scheme challenged impermissibly delegates lawmaking power on a state matter, we note that the legislative scheme challenged here provides that the state-wide rules for imposing "interest, penalties, collection or administration fees . . . are applicable to all cities and villages if not inconsistent with their respective charters or an ordinance enacted pursuant to their respective charters." MCL 211.107(1). Thus, rather than vesting discretion in local legislative bodies to waive penalties and interest already accrued, the Michigan Legislature only allows that, where the local government has a system in place for handling penalties and interest for late tax payments, that same system is to be applied to late SET payments as well. Our Supreme Court affirmed that, under MCL 211.107(1), "if a conflict exists between the [General Property Tax Act] and the city charter, the charter governs." *Booker v Detroit*, 469 Mich 892, 893 (2003) (*Booker III*).[4]

---

[4] In *Booker III*, a case involving tax foreclosure procedures, our Supreme Court partially reversed an opinion by this Court that applied a prior published decision that this Court disagreed with: *Booker v Detroit*, 251 Mich App 167, 179-185, 650 NW2d 680 (2002) (*Booker II*), which held that *Magee v Detroit*, 203 Mich App 228; 511 NW2d 717 (1994) (*Booker I*), was binding precedent despite the *Booker II* panel's disagreement. Thus, the Supreme Court's partial reversal of *Booker II* actually affirmed the panel's opinion that *Booker I* was wrongly decided. Therefore, our Supreme Court affirmed in *Booker III* that, under MCL 211.107(1), the Legislature could delegate control of interest, penalties, fees, collection procedures, and lien enforcement to chartered municipalities.

We conclude that the Court of Claims did not err in granting summary disposition to defendant.[5]

Affirmed.

---

[5] Plaintiffs assert on appeal, but did not argue below, that under the Ann Arbor City Charter, Ann Arbor acts like a township in its collection of state, local, and school taxes, and, therefore, that Ann Arbor charges only a one percent interest penalty on these taxes—the same as the interest penalty townships charge. Plaintiffs assert on appeal that were it not for MCL 211.905(1), cities would charge only one percent on the SET as well. Stated differently, plaintiffs assert on appeal that rather than permitting a city to collect the SET as it does other similar taxes, it compels a city to charge a higher rate. As noted, this argument was not made below, nor is there clear support for the factual predicate of this argument in the record. We note, however, that if this argument had been preserved and if it were, in fact, established, that would present a different issue.