# STATE OF MICHIGAN

# COURT OF APPEALS

ANITA L. SHEARDOWN,

Plaintiff-Appellant,

v

JANINE GUASTELLA,

Defendant-Appellee.

FOR PUBLICATION
May 15, 2018
9:00 a.m.

No. 338089
Oakland Circuit Court
Family Division
LC No. 2016-846855-DC

Before: MURRAY, C.J., and FORT HOOD and GLEICHER, JJ.

MURRAY, C. J.

In this child custody action brought pursuant to the Child Custody Act, MCL 722.21 *et seq.*, plaintiff appeals as of right from an order granting summary disposition in favor of defendant. The trial court dismissed plaintiff's case on the basis that she lacked standing to seek custody. But, after a remand from this Court, the trial court held that the definition of "parent" contained within MCL 722.22(i) was unconstitutional as applied to plaintiff. Nonetheless, the court concluded that its ruling would not be applied retroactively, so the court maintained its ruling that plaintiff could not pursue this custody action. We hold that MCL 722.22(i) is not unconstitutional as applied to plaintiff, and affirm the trial court's dismissal of her complaint.

## I. MATERIAL FACTS AND PROCEEDINGS

This case arises from plaintiff and defendant's now terminated romantic relationship. During their relationship defendant entered into a contract (the agreement) with plaintiff and a sperm donor, who agreed to assist defendant with becoming pregnant. In the agreement, the donor promised that he would not "try to become a legal part of any child born from [the] inseminations, or ask for custody or visitation rights at any time." The agreement also contained a statement that plaintiff and defendant "intend[ed] to be legal parents of any child born as a result of [the] inseminations," and that "they will file a petition for [plaintiff] to adopt the child as soon as possible after its birth." Ultimately, defendant's child, MEG, was born as a result of this agreement.

-1-

Plaintiff and defendant's romantic relationship continued for some time after MEG's birth. However, plaintiff and defendant never married, nor did plaintiff seek to adopt MEG. Ultimately, plaintiff and defendant's relationship ended no later than February 2014.[1] In 2016 plaintiff filed a complaint in the trial court to initiate a child custody dispute concerning MEG, wherein plaintiff requested custody of, and parenting time with, MEG on the grounds that it was in MEG's best interests as she had acted as his parent for a number of years. Defendant filed an answer to plaintiff's complaint, and subsequently moved for summary disposition. The trial court ultimately granted defendant's motion on the basis, as noted earlier, that plaintiff lacked standing to pursue the action.

On appeal, plaintiff argued that she should be considered a parent under the agreement and, therefore, had standing to maintain the custody action. In that regard, she argued that the fundamental right to parent recognized in *Troxel v Granville*, 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000), was violated by the court's refusal to allow her to seek custody of MEG. After oral argument before this Court, a majority entered an order remanding this case "for consideration of whether MCL 722.22(i) is constitutional as applied to the facts of this case, in light of *Obergefell v Hodges*, ___ US___; 135 S Ct 2584; 192 L Ed 2d 609 (2015), and *Pavan v Smith*, ___ US ___; 137 S Ct 2075; 198 L Ed 2d 636 (2017)." *Sheardown v Guastella*, unpublished order of the Court of Appeals, entered November 14, 2017 (Docket No 338089).[2]

As it was required to do, on remand, the trial court issued an opinion and order addressing what the majority asked of it, whether MCL 722.22(i) is constitutional as applied to the facts of this case, in light of *Obergefell* and *Pavan*. The trial court held that it was, but that it did not affect the ultimate disposition because the court could not go back in time and determine whether the parties would have married had it not been for the state law precluding them from doing so.[3]

## II. THE CONSTITUTIONALITY OF MCL 722.22(i) AS APPLIED TO PLAINTIFF

Generally, this Court reviews de novo questions of constitutional law. *Mayor of Detroit v Arms Technology, Inc*, 258 Mich App 48, 57; 669 NW2d 845 (2003), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We embrace the presumption that statutes are

---

[1] Plaintiff and defendant, who were a same-sex couple, ended their relationship more than a year prior to the United States Supreme Court's decision in *Obergefell v Hodges*, ___ US ___; 135 S Ct 2584; 192 L Ed 2d 609 (2015).

[2] Presiding Judge Murray dissented from the *sua sponte* remand, arguing that the constitutional issue ordered to be addressed by the trial court was injected into the case by the Court, not the parties. See *Sheardown v Guastella*, unpublished order of the Court of Appeals, entered November 14, 2017 (Docket No 338089) (MURRAY, P.J., dissenting).

[3] At oral argument before this Court, plaintiff's counsel conceded that the courts should not attempt to reconstruct whether the parties would have married prior to their breakup in 2012 had they had the right to do so.

constitutional, and the party challenging the constitutional validity of a statute bears a heavy burden. *Phillips v Mirac, Inc*, 470 Mich 415, 422-423; 685 NW2d 174 (2004).

This as-applied challenge to the constitutional validity of MCL 722.22(i) must be considered in light of the facts and circumstances existing at the time of the complaint's filing.[4] See generally *Miller v Allstate Ins Co*, 481 Mich 601, 606; 751 NW2d 463 (2008) and *Friends of the Earth, Inc v Laidlaw Environmental Servs (TOC), Inc*, 528 US 167, 189; 120 S Ct 693; 145 L Ed 2d 610 (2000). Plaintiff's complaint was filed on October 7, 2016, more than a year after the *Obergefell* Court struck down Michigan's constitutional and statutory prohibitions on same-sex marriage. Thus, when considering the constitutionality of MCL 722.22(i) as applied to these parties, it must be recognized that at the time the case was filed (1) Michigan was required to recognize same-sex marriages, (2) our Court had already held that the definition of "parent" under MCL 722.22(i) did not run afoul of *Obergefell* because "that definition applies equally to same-sex and opposite-sex married couples,"[5] (3) the parties never availed themselves of the marriage laws of other states that recognized same-sex marriages, and (4) the parties' relationship had, at a minimum, ended some two-and-a-half years before, and approximately a year-and-a-half prior to the issuance of *Obergefell*.

In light of these undisputed factual and legal propositions, and when applying the governing law under the equal protection and due process clauses of the federal Constitution,[6] it is apparent that there is no constitutional infirmity to MCL 722.22(i). In *Barrow v Detroit Election Comm*, 301 Mich App 404, 419-420; 836 NW2d 498 (2013), our Court set forth the standards governing the equal protection inquiry:

> In undertaking constitutional analysis, we are mindful—as was the circuit court—that legislation challenged on equal protection grounds is presumed constitutional and the challenger has the burden to rebut that presumption. *Boulton v Fenton Twp*, 272 Mich App 456, 467; 726 NW2d 733 (2006). Courts examine three factors when determining whether a law violates the Equal Protection Clause: "the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in

---

[4] The trial court erred when it concluded that it lacked subject matter jurisdiction because "the Child Custody Act does not afford Plaintiff substantive rights to Defendant's child or Defendant substantive rights to Plaintiff's child." The trial court's analysis, while germane to considering whether plaintiff had standing to initiate a child custody dispute under the Child Custody Act, did not address whether the trial court itself lacked the right to exercise jurisdiction over child custody disputes. There is no dispute that a circuit court has the right to exercise jurisdiction over child custody, as the Child Custody Act expressly contemplates that "a child custody dispute" may be "submitted to the circuit court as an original action under this act . . . ." MCL 722.27(1).

[5] *Stankevich v Milliron (On Remand)*, 313 Mich App 233, 237-238 n 2; 882 NW2d 194 (2015).

[6] See US Const, Am XIV.

support of the classification." *Dunn v Blumstein*, 405 US 330, 335; 92 S Ct 995; 31 L Ed 2d 274 (1972).

When evaluating an equal protection challenge to a provision, courts apply one of three traditional levels of review. *Heidelberg Bldg, LLC v Dep't of Treasury*, 270 Mich App 12, 18; 714 NW2d 664 (2006). Traditionally, the rational basis test applies where no suspect factors are present or where no fundamental right is implicated. *Kyser v Kasson Twp*, 486 Mich 514, 522 n 2; 786 NW2d 543 (2010). Under this test, a statute is constitutional if it furthers a legitimate governmental interest and if the challenged statute is rationally related to achieving that interest. *Boulton*, 272 Mich App at 467. Thus, restrictions are set aside only if they are based on reasons unrelated to the state's goals and no grounds can be conceived to justify them.

The most heightened review, strict scrutiny, applies when the provision interferes with a fundamental right or classifies based on factors that are suspect, such as race, national origin, or ethnicity. *Rose v Stokely*, 258 Mich App 283, 300; 673 NW2d 413 (2003). Under a strict scrutiny analysis, the government may not infringe upon a fundamental liberty interest unless the infringement is narrowly tailored to serve a compelling state interest. *In re B & J*, 279 Mich App 12, 22; 756 NW2d 234 (2008).

There are two reasons why plaintiff cannot establish a violation of the equal protection and due process clauses of the federal Constitution. First, *Obergefell* and its limited progeny do not have any impact on plaintiff as she was never married, and she is not asking the courts to create a marriage post hoc. Second, under an equal protection analysis, plaintiff is simply not subject to dissimilar treatment under the statute compared to a heterosexual unmarried individual.

## A. *OBERGEFELL'S* PRINCIPLES DO NOT APPLY

As noted above, the parties were never married and the plaintiff has disavowed any interest (as has the dissent) in going back in time in an attempt to determine whether the parties would have been married had they had the legal option to do so prior to *Obergefell*. This is important because *Obergefell* addressed only the fundamental right to marry protected by the liberty interest of the due process clause, and the many state laws that did not recognize that right relative to same-sex couples. And, as *Pavan*, ___ US at ___; 137 S Ct at 2078 recognized, the overarching principle from *Obergefell* requires states to afford the same *marriage-related* benefits to same-sex married couples that are afforded to heterosexual married couples. See also *McLaughlin v Jones*, 243 Ariz 29, ___; 401 P3d 492, 497 (2017) (reasoning that "the benefits *attendant to marriage* were expressly part of the [*Obergefell*] Court's rationale for concluding that the Constitution does not permit states to bar same-sex couples from marriage 'on the same terms' "), quoting *Obergefell*, ___ US at ___; 135 S Ct at 2607 (emphasis added); *In re Estate of Carter*, ___ Pa ___, ___; 159 A3d 970, 977 (2017) (*Obergefell* was limited to recognizing the constitutional right of same-sex couples to marry under state law and not to be subsequently denied the same state law privileges afforded opposite-sex married couples). In other words, *Obergefell* requires states to recognize a legal marriage between individuals of the same sex and, as *Pavan* reveals, once the state recognizes these marriages it cannot deny government benefits

that are offered to heterosexual married couples. And that is why our Court, with respect to this very statute, concluded that MCL 722.22(i) applies equally to same-sex and heterosexual *married* couples. *Stankevich v Milliron (On Remand)*, 313 Mich App 233, 237-238 n 2; 882 NW2d 194 (2015).

But the parties were never married. They had the option to marry in several different states while they were in a relationship, but for whatever reason (and they offer conflicting ones), they did not. Nor did plaintiff ever seek to adopt MEG, even though that legal right existed after *Obergefell* was decided, see *Mabry v Mabry*, 499 Mich 997, 998-999 (2016) (MCCORMACK, J., dissenting), most likely because the parties' relationship had ended years prior. Consequently, plaintiff is not in a position to argue that she was denied a benefit granted to a heterosexual *married* person, as she was never married to defendant. As a result, the liberty interest in the right to marry which was extended to same-sex couples in *Obergefell* simply does not come into play.

## B. WITHOUT DISSIMILAR TREATMENT, NO EQUAL PROTECTION VIOLATION EXISTS

As noted, the equal protection clause generally prohibits the government from treating similar persons differently without a valid reason to do so. See *In re Parole of Hill*, 298 Mich App 404, 420-422; 827 NW2d 407 (2012) (recognizing the compelling state interest and rational basis tests). If possible, we must construe a statute in a constitutional manner. See *In re Rood*, 483 Mich 73, 121; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.); *People v Wilson*, 230 Mich App 590, 593-594; 585 NW2d 24 (1998). What is dispositive to this constitutional argument is that a male in an opposite-sex relationship could also meet the same fate as plaintiff, and thus receive the same treatment as plaintiff under the statute. For example, suppose the female in an opposite-sex relationship becomes pregnant with a third parties' child, but once born, the male in the relationship treats the child as his own. Once the relationship ends, the male would be in the same position as plaintiff relative to the statutory definition of "parent," i.e., he would have no biological or legal link to the child born during the relationship. Because the foregoing shows that the statute can be applied equally to someone in plaintiff's position, but not in a same-sex relationship, MCL 722.22(i) is constitutional.[7]

The Virginia Court of Appeals came to the same conclusion regarding its common-law definition of "parentage," which is the same as our statutory definition of "parent." In *Hawkins v Grese*, 68 Va App 462, 475; 809 SE2d 441 (2018), the court held that there was no dissimilar

---

[7] With respect to the dissent's conclusion that unlawful dissimilar treatment exists under the statute, the dissent bases its conclusion on the rationale that plaintiff could not be a "parent" because she has no biological link to the child born to defendant and could not adopt the child when he was born, while a heterosexual individual who *has* a biological link to the child would be a "parent" under MCL 722.22(i). A true statement, but, as we noted above, that is not the end of the inquiry, as the proper question is whether the statute can be applied constitutionally, and it can.

treatment under that state's biological/legal definition of "parentage," since it applied equally to all:

> Further, this definition of parentage does not discriminate between same-sex and opposite-sex couples. If the couple is not married, the non-biological/non-adoptive partner is not a parent irrespective of gender or sexual orientation. It is true that when Hawkins and Grese began their relationship, the law of the Commonwealth barred Hawkins and Grese from marrying, but the record does not indicate this was the sole reason they remained unmarried. While those laws previously banning same-sex *marriage* were discriminatory, the Commonwealth's definition of parent is not as it applies equally regardless of an unmarried couple's gender or sexual orientation.

Because MCL 722.22(i) can apply equally to same-sex and opposite-sex nonmarried couples, there is no equal protection violation.

We also conclude that even if dissimilar treatment did occur to plaintiff, it was not unconstitutional treatment under either the equal protection clause or the due process clause.[8] Nothing within MCL 722.22(i) distinguishes between same-sex and opposite-sex married couples, a proposition we recognized in *Stankevich*, 313 Mich App at 237-238 n 2. Instead, MCL 722.22(i) distinguishes only between those who have a biological or legal link to the child, and those that do not. Such a distinction, particularly when applied to plaintiff, a non-married person, does not run afoul of the constitutional principles declared in *Obergefell*. Nor does it suggest unlawful unequal treatment. Again, the *Hawkins* court utilized the same rationale in upholding Virginia's definition of parentage:

> In sum, the entire basis of the holding of *Obergefell* is the significance and importance of *marriage* as an institution that should not be withheld from same-sex couples. Barring procreation or adoption, pre-*Obergefell*, different-sex marriages did not automatically result in the spouses becoming legal parents of each other's children and the analysis of the *Obergefell* majority opinion does not compel a different conclusion with respect to same-sex marriages, far less unmarried couples of any sexual orientation. [*Hawkins*, 68 Va App at 476-477.]

We agree with this proposition, which satisfies the deferential rational basis review applicable to this challenge. *Lake v Putnam*, 316 Mich App 247, 254-256; 894 NW2d 62 (2016).

There are several significant differences between our opinion and that of the dissent. First off, the dissent fails to recognize that *Obergefell* did not grant same-sex couples anything more than the right to have states recognize their marriage (not an insignificant right, no doubt),

---

[8] The rational basis test is applied to an equal protection challenge based on alleged dissimilar treatment between heterosexual and homosexual persons. See *Bostic v Schaefer*, 760 F3d 352, 397 (CA 4, 2014) (NIEMEYER, J., dissenting), and cases cited therein. The *Obergefell* Court did not specify what standard of review it was using for equal protection purposes.

and to treat *those marriages* the same as ones between heterosexuals. As we have explained, *Pavan* made this point clear when it held that the Arkansas Supreme Court's decision "denied married same-sex couples access to the 'constellation of benefits that the Stat[e] ha[s] linked to marriage.' " *Pavan*, ___ US at ___; 137 S Ct at 2078, quoting *Obergefell*, ___ US at ___; 135 S Ct at 2601 (alternations in original). Plaintiff can simply reap no benefit from either *Obergefell* or *Pavan* because she was never married, nor ever engaged to be married.

And that brings us to our second point. Our reference to plaintiff not having married-either before or after *Obergefell*-was not to "fault" her, or to raise any socioeconomic issues. Indeed, we know nothing of the parties' economic situations. Rather, our point was that in each case decided post-*Obergefell*, including *Pavan*, *Stankevich*, *McLaughlin*, and *In re Estate of Carter*, the parties had been married (either in their state or another) and were seeking to obtain a benefit of marriage that was granted to heterosexual married couples. But when a party comes before the court not a part of a marital relationship, as in this case and *Hawkins*, he or she is not entitled to the "constellation of benefits" referenced in *Obergefell*. Thus, plaintiff's marital status is highly relevant to the *legal* issues presented, and not to any other social or economic matter.

Additionally, we are unclear how MCL 722.22(i) makes a classification based on sexual orientation. Nothing in the words of the statute does, and our Court has already stated that this statute applies equally to same-sex and opposite-sex marriages. *Stankevich*, 313 Mich App at 237 n 2. Nor can we allow any perceived inequities for a particular party to control our duty to objectively apply the law. *Progressive Michigan Ins Co v Smith*, 490 Mich 977, 978-979 (YOUNG, C.J., concurring).

For these reasons, we reverse the trial court's holding that MCL 722.22(i) is unconstitutional as applied to plaintiff,[9] but affirm the trial court's ultimate order dismissing plaintiff's complaint for custody.

Affirmed. No costs, a question of public importance being involved. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher

---

[9] As explained by this Court in *Lake*, 316 Mich App at 256, the equitable-parent doctrine is inapplicable to all unmarried couples, and thus the doctrine does not run afoul of either the equal protection or due process clauses. *Lake* is binding on this Court, MCR 7.215(J)(1), and the Supreme Court has declined to address the issue any further. See *Mabry*, 499 Mich 997 (2016) (MCCORMACK, J., dissenting).