# Order

Michigan Supreme Court
Lansing, Michigan

August 2, 2016

153082

Robert P. Young, Jr.,
Chief Justice

Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen,
Justices

DEANNA D. MABRY,
        Plaintiff-Appellant,

v

JOHANNA SUZANNE-GRAINE MABRY,
        Defendant-Appellee.

_____/

SC: 153082
COA: 329786
Washtenaw CC: 15-001873-DC

On order of the Court, the application for leave to appeal the December 18, 2015 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MCCORMACK, J. (*dissenting*).

I respectfully dissent from this Court's order denying leave to appeal. I would grant leave to appeal to address whether *Obergefell v Hodges*, 576 US ___; 135 S Ct 2584 (2015), compels us to apply our equitable-parent doctrine to custody disputes between same-sex couples who were unconstitutionally prohibited from becoming legally married.

Until 2015, same-sex couples were not permitted to marry in Michigan. See MCL 551.1. Nor did Michigan recognize a legal marriage between a same-sex couple solemnized in another jurisdiction. See MCL 551.271; Const 1963, art 1, § 25. Michigan also prohibited second-parent adoption between unmarried couples. See MCL 710.24. Thus, before the Supreme Court's decision in *Obergefell*, a same-sex partner had no legal recourse to seek parental rights to a child born or adopted into his or her committed relationship but carried or adopted by his or her partner. I would grant leave to appeal to consider whether the Court of Appeals' peremptory order in this case illustrates and perpetuates the troubling effect of this state's unconstitutional ban on same-sex marriage and second-parent adoption identified by the Supreme Court in *Obergefell*.

The relationship between the parties in this case was longstanding and committed. The plaintiff and the defendant began their relationship in 1995 in Philadelphia, and soon after moved together to Michigan. The parties took repeated steps to solidify their relationship and demonstrate their commitment to one another. These steps included filing a declaration of domestic partnership, purchasing a home together, entering a formal domestic-partnership agreement, solemnizing their relationship in a commitment ceremony in Hawaii, and entering into a marriage covenant in the form of a ketubah. The defendant took the plaintiff's last name. During the entire course of their relationship, they were prohibited from marrying each other in Michigan, and Michigan did not

recognize extra-jurisdictional same-sex marriage.

After taking these deliberate steps to solidify their relationship, the parties decided to have children. They agreed that the defendant would carry the children through pregnancy using an anonymous donor. The parties had three children between 2001 and 2008, all of whom were biological children of the defendant but took the plaintiff's last name and were parented by both the defendant and the plaintiff. During their relationship, the plaintiff's parental role in the children's lives was significant: She provided the defendant and the children with health insurance, she was the sole financial provider for the family, and she provided care and guidance to the children. The defendant executed a will and trust agreements that provided that in the event of her death, the plaintiff would be the children's legal guardian and conservator.

In 2010, five years before the decision in *Obergefell*, the parties ended their 15-year relationship. For the following year, the plaintiff remained in the family home, continued paying for health insurance for the defendant and the children, and paid all other family bills and living expenses. Eventually, the parties were unable to resolve custody and financial-support arrangements, and the defendant prohibited the plaintiff from seeing the children.

After *Obergefell* was decided, the plaintiff filed a complaint for custody and parenting time, seeking legal and physical custody of the parties' three children pursuant to Michigan's common-law equitable-parent doctrine. The trial court denied the defendant's early motion for summary disposition, noting that it needed further factual development before it could decide whether the plaintiff had standing to pursue custody under the equitable-parent doctrine. See *Atkinson v Atkinson*, 160 Mich App 601 (1987). The defendant filed an interlocutory appeal in the Court of Appeals, and the Court of Appeals peremptorily vacated the trial court's denial of summary disposition. The order held that the plaintiff did not have standing to bring a custody action pursuant to the equitable-parent doctrine because that doctrine is only available to a parent who was married. *Mabry v Mabry*, unpublished order of the Court of Appeals, entered December 18, 2015 (Docket No. 329786). The plaintiff sought leave to appeal in this Court, arguing that the failure to apply the equitable-parent doctrine to nonbiological parents who were unconstitutionally prohibited from marrying the biological parent of their children violated her equal protection and due process rights as well as those of her children.

The equitable-parent doctrine recognizes a third person who is not a biological parent as the child's parent when (1) the would-be equitable parent and the child acknowledge the parental relationship or the biological or adoptive parent has cultivated the development of a relationship over a period of time, (2) the would-be equitable parent desires to have the rights afforded a parent, and (3) the would be-equitable parent is willing to pay child support. *Atkinson*, 160 Mich App at 608-609. This Court endorsed

the equitable-parent doctrine in *Van v Zahorik*, 460 Mich 320, 330-331 (1999), but limited its application to would-be parents who were married.

The plaintiff's constitutional challenges merit further review from this Court. I would grant leave to consider whether *Obergefell* compels us to apply the equitable-parent doctrine to same-sex couples who had children conceived or adopted by one party during their relationship but were unconstitutionally prohibited from marrying under this state's law. I would address whether the line drawn by the Court of Appeals in this case impermissibly violates both the plaintiff's and her children's equal protection and due process rights by creating an untenable requirement that same-sex couples have sought a legal marriage in another jurisdiction, despite the fact that any extra-jurisdictional marriage would have been legally unrecognized in Michigan.

In *Obergefell*, the Supreme Court held that Michigan's ban on same-sex marriage was unconstitutional, that marriage is a fundamental right, and that same-sex couples and their children are equally entitled to the benefits of marriage. *Obergefell*, 576 US ___, ___; 135 S Ct at 2604-2605. Indeed, the children of same-sex couples and their constitutional rights were central to the Court's analysis in *Obergefell*. The Court reasoned:

> Excluding same-sex couples from marriage thus conflicts with a central premise of the right to marry. Without the recognition, stability, and predictability marriage offers, their children suffer the stigma of knowing their families are somehow lesser. They also suffer the significant material costs of being raised by unmarried parents, relegated through no fault of their own to a more difficult and uncertain family life. The marriage laws at issue here thus harm and humiliate the children of same-sex couples. [*Id*. at ___; 135 S Ct at 2600-2601.]

The Court's decision in *Obergefell* reflects a long-recognized constitutional principle that children born to unmarried parents are entitled to the same benefits as children born to married parents. See, e.g., *Weber v Aetna Cas & Surety Co*, 406 US 164, 165 (1972) (holding that a workers' compensation statute denying equal recovery rights to dependent unacknowledged children violated equal protection); *Clark v Jeter*, 486 US 456, 457, 465 (1988) (holding that a six-year statute of limitations for paternity actions to seek support, required for a child of an unmarried couple but not a child of a married couple, violated equal protection); *New Jersey Welfare Rights Org v Cahill*, 411 US 619, 621 (1973) (holding that a state program that denied benefits to children who were not of the marriage violated equal protection).

The Court of Appeals' order in this case overlooks this general principle. If not for this state's unconstitutional prohibition on their parents' right to marry, the children in this case would be entitled to all the benefits conferred on children of opposite-sex couples by the equitable-parent doctrine. And as a result of the Court of Appeals' order, the parties' children will be unable to seek the love and guidance of the plaintiff, have

access to her healthcare benefits, social security benefits, and death benefits, or inherit from her if she dies intestate.

What is more, the plaintiff's fundamental right to parent her children is potentially violated by the Court of Appeals' ruling. Denying individuals who were unconstitutionally prohibited from marrying access to the equitable-parent doctrine perpetuates the constitutional harms inflicted by the state's unconstitutional prohibition of same-sex marriage. By denying the parties access to marriage, and subsequently to the benefits of marriage, including the equitable-parent doctrine, the Court of Appeals' ruling may contravene the United States Supreme Court's direction in *Obergefell* that same-sex couples have a fundamental right to marriage and the benefits of marriage.

This case is of course distinguishable from our decision in *Van*, in which the parties had the option to get married, but chose not to. *Van*, 460 Mich at 323. The plaintiff here was unconstitutionally prohibited from marrying the defendant, though she took every legal step available to replicate marriage. In my view, the Court of Appeals' decision overlooks our central reasoning in *Van*, in which we noted that limiting the equitable-parent doctrine to children born or adopted within a marriage reinforces the "importance of marriage and legitimacy." *Id.* at 333. When the parents themselves did not choose not to marry, but instead had that choice made for them by our state's laws, and the parents otherwise demonstrated the same commitment and legitimacy as married parents, their children should not be barred from the potential benefits of our common-law rule. In other words, we should consider whether the constraint that makes it impossible for the children of same-sex parents to benefit from the equitable-parent doctrine is constitutionally viable post-*Obergefell*.

The defendant's argument that this Court should not apply the equitable-parent doctrine to the plaintiff because it would enable any third party to gain parental rights is not powerful.[1] The plaintiff is not *any* person. She acted as a parent, providing her name, her love, support, and affection, her financial support, and her health insurance to these children. Yet, under the Court of Appeals' order, she is a legal third party to the children. I think that this Court might fashion a rule to ensure that the plaintiff's and the children's constitutional rights are protected without opening the doctrine to any third party seeking parental rights.

Not surprisingly, this issue is not unique to Michigan. Other state courts have grappled with the implications of *Obergefell* on common-law doctrines akin to our equitable-parent doctrine. Many have already extended similar equitable doctrines to

---

[1] The defendant has argued that the equitable-parent doctrine should not apply to the plaintiff because it would infringe her rights to parent by allowing any person the ability to seek custody. See *Troxel v Granville*, 530 US 57 (2000) (holding that a visitation statute that allowed *any person* to petition a court for visitation rights violated the fundamental right of the child's parents to parent).

same-sex couples who were prohibited from marrying yet had children during their relationship. These states have provided guidance and workable rules for trial courts under similar doctrines while preserving the constitutional rights of same-sex couples who were unconstitutionally prohibited from marrying and parenting their children. See, e.g., *In re Registered Domestic Partnership of Madrone*, 271 Or App 116, 129 (2015) (holding that "[b]ecause the question is whether a couple would have married *if they could have*, the factfinder must determine what the individual's views would have been if marriage had not been prohibited"); *Ramey v Sutton*, 2015 Okla 79, ¶ 13; 362 P3d 217, 220-221 (2015) (holding that a same-sex couple's failure to marry before *Obergefell* could not be used to prevent the nonbiological parent from seeking custody of the child when she had acted *in loco parentis* to the child); cf. *Conover v Conover*, ___ Md ___, ___ (July 7, 2016) (Docket No. 79), pp 35-36 (holding that a same-sex partner had standing under the de facto parent doctrine to pursue custody of a child born to her partner before their marriage).[2]

---

[2] Many other states addressed this issue before *Obergefell*. See, e.g., *Bethany v Jones*, 2011 Ark 67, pp 10-12 (2011) (holding that a same-sex partner, who was not legally married, stood *in loco parentis* to the child); *ENO v LMM*, 429 Mass 824, 829-830 (1999) (holding that a same-sex partner was the de facto parent of the biological child of her former partner); *Mullins v Picklesimer*, 317 SW3d 569, 574-577 (Ky, 2010) (holding that a same-sex partner had standing to pursue custody of her former partner's biological child when the child was born into the relationship and the partner coparented the child); *In re Parentage of LB*, 155 Wash 2d 679, 683 (2005) (holding that a same-sex partner had standing to pursue custody of her former partner's biological child when she was the de facto parent).

And while some other states have yet to squarely address the issues raised in this case post-*Obergefell*, they have resolved similar issues on the basis of their unique state statutes. See, e.g., *McGaw v McGaw*, 468 SW3d 435, 442-443, 448 (Mo App, 2015) (holding that the equitable-parentage theory did not apply to a same-sex couple who had separated before *Obergefell* because there was a separate statute enabling the parent to seek third-party custody and visitation); *Russell v Pasik*, 178 So 3d 55, 61 (Fla App, 2015) (holding that a same-sex partner did not have standing to seek custody and visitation rights by asserting de facto parent status, but noting that the same-sex partner could have adopted the children under Florida's adoption statutes); *Sheets v Mead*, 238 Ariz 55, 58 (Ariz App, 2015) (denying nonparent visitation to a same-sex partner, who had been a foster parent of the child with her partner before the couple's separation, after the other partner adopted the child because the child was no longer "born out of wedlock" as required by the statute providing nonparent visitation rights).

As with all child custody disputes, the child's best interests are paramount, and trial courts regularly engage in fact-finding to determine how those interests should be served. I believe Michigan's trial courts are capable of evaluating the parties' relationship to determine whether the parties would have married but for Michigan's unconstitutional prohibition of same-sex marriage in the limited number of cases in which this issue will arise.[3]

Like the many other state courts addressing this issue, then, I would grant leave to appeal to consider whether *Obergefell v Hodges* compels us to apply our equitable-parent doctrine to custody disputes between same-sex couples who were unconstitutionally prohibited from becoming legally married. The Constitution might require that the children born and adopted into same-sex families be able to access the same benefits that children born into opposite-sex families have under Michigan law when they arrive at our courthouse doors. At the very least, this question deserves this Court's considered analysis.

BERNSTEIN, J., joins the statement of MCCORMACK, J.

---

[3] Any exception to our decision in *Van*, 460 Mich 320, limiting the equitable-parent doctrine to married couples would extend only to the small group of same-sex couples who were unconstitutionally prohibited from marrying but separated the Supreme Court's decision in *Obergefell* and have a custody dispute.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

August 2, 2016



Clerk

s0726