# STATE OF MICHIGAN

# COURT OF APPEALS

ANITA L. SHEARDOWN,

   Plaintiff-Appellant,

v

JANINE GUASTELLA,

   Defendant-Appellee.

FOR PUBLICATION
May 15, 2018

No. 338089
Oakland Circuit Court
Family Division
LC No. 2016-846855-DC

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

FORT HOOD, J. (*dissenting*).

  I respectfully dissent. At the heart of this case lies the well-being of a minor child who, without reason or justification aside from the fact that his parents were in a same-sex relationship and were not legally permitted to marry, has been denied the opportunity to continue a relationship with one of his parents, as well as his biological sibling. The foundation of the majority's conclusion permitting such action, that MCL 722.22(i) is constitutional on equal protection and due process grounds as applied to plaintiff, is grounded in its correct recognition that plaintiff and defendant were not legally married. However, the pivotal and very unfortunate fact not in dispute in this case is that plaintiff and defendant were legally forbidden by the state of Michigan from entering into a legally recognized marriage (1) before MEG was born, (2) on the date of his birth, July 26, 2011, and (3) in the time thereafter, before the breakdown of their romantic relationship. It was not until June 26, 2015, when the United States Supreme Court recognized that no person should be denied the fundamental right to marry, that members of same-sex relationships were afforded the basic human right to join in marriage, and all its attendant benefits, rights that all other Americans enjoyed before this date. As a result of the injustice that existed before *Obergefell v Hodges*, 576 US ___; 135 S Ct 2584; 192 L Ed 2d 609 (2015), and which the *Obergefell* Court sought to remedy, plaintiff was legally foreclosed from taking the necessary steps to protect her relationship with MEG. The one that bears the bitter consequence of his parents' legal inability to marry is young MEG, and the end result of this case in this Court is that plaintiff will play no part in MEG's life, and MEG will have no further relationship with his biological sibling. I cannot countenance such a result, particularly in light

-1-

of the controlling United States Supreme Court precedent recognizing the right of same-sex couples to marry and to avail themselves of the concomitant benefits, and for the reasons set forth below, I would reverse and remand for further proceedings.[1]

## I. MCL 722.22(i)

The Child Custody Act (CCA), MCL 722.21 *et seq*. governs custody, parenting time and child support issues for minor children in Michigan. MCL 722.24(1). As this Court has observed, the CCA "is the exclusive means of pursuing child custody rights[.]" *Aichele v Hodge*, 259 Mich App 146, 153; 673 NW2d 452 (2003) (quotation marks and citation omitted). The Legislature has also directed that the CCA, legislation that is "equitable in nature[,]" should be "liberally construed[.]" MCL 722.26(1). MCL 722.22(i) defines parent in the following terms:

"Parent" means the natural or adoptive parent of a child.

Where plaintiff is not a biological parent or a legal parent, she is considered a third person under the CCA. *Van v Zahorik*, 460 Mich 320, 328; 597 NW2d 15 (1999). The parties do not dispute that plaintiff does not meet the definition of a third person as contemplated by MCL 722.26c. Plaintiff also does not have standing under the CCA as a guardian or limited guardian. See MCL 722.26b. Therefore, this Court must decide whether, under the circumstances of this case, MCL 722.22(i)'s definition of parent violates plaintiff's equal protection and substantive due process rights, where it excludes from its ambit plaintiff, a member of a same-sex partnership that bore a child, who was legally prohibited from marrying her same-sex partner and adopting MEG before the United States Supreme Court's landmark decision in *Obergefell*. I answer this question in the affirmative and would hold that MCL 722.22(i) is unconstitutional as applied to plaintiff.

## II. UNITED STATES SUPREME COURT PRECEDENT

In *Obergefell*, the petitioners argued that the respondent state officials violated the Fourteenth Amendment in enforcing laws denying them the right to marry in their home state, or to have marriages validly performed in another state recognized in their home state. *Obergefell*, 576 US ___; 135 S Ct at 2593. The *Obergefell* Court ultimately held, in pertinent part, as follows:

---

[1] During their romantic relationship, defendant entered into a November 13, 2010 agreement (the donor agreement) with plaintiff and a sperm donor (the donor) who agreed to assist defendant with becoming pregnant. The donor agreement contained a statement that plaintiff and defendant "intend[ed] to be legal parents of any child born as a result of [the] inseminations," and that "they will file a petition for [plaintiff] to adopt the child as soon as possible after its birth." During their romantic relationship plaintiff gave birth to MEG's half-sister, also conceived through artificial insemination, who is biologically related to MEG.

> [T]he right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty. The Court now holds that same-sex couples may exercise the fundamental right to marry. No longer may this liberty be denied to them. *Baker v Nelson* must be and now is overruled, and the State laws challenged by Petitioners in these cases are now held invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples. [*Obergefell*, 576 US ___; 135 S Ct at 2604-2605.]

Importantly, and as relevant to this case, in *Obergefell* the Court recognized a "constellation of benefits . . . linked to marriage[,]" that same-sex couples were historically and unconstitutionally deprived of as a result of being denied the right to marry. *Id*. at 2601. These included, according to the *Obergefell* Court, the following:

> These aspects of marital status include: taxation; inheritance and property rights; rules of intestate succession; spousal privilege in the law of evidence; hospital access; medical decisionmaking authority; *adoption rights*; the rights and benefits of survivors; birth and death certificates; professional ethics rules; campaign finance restrictions; workers' compensation benefits; health insurance; *and child custody, support, and visitation rules*. [*Id*. (emphasis added).][2]

Following *Obergefell*, the United States Supreme Court more recently decided *Pavan v Smith*, ___ US ___; 137 S Ct 2075; 198 L Ed 2d 636 (2017), where two married same-sex couples in Arkansas, having conceived their children through anonymous sperm donation, challenged an Arkansas state statute setting forth who could appear as parents on a child's state issued birth certificate. The state law "generally require[d] the name of the mother's male spouse to appear on the child's birth certificate-regardless of his biological relationship to the child[,]" and the Arkansas Supreme Court concluded that this rule would not extend to same-sex couples. *Id*. at ___; 137 S Ct at 2077. The United States Supreme Court held that such "differential treatment infringes *Obergefell's* commitment to provide same-sex couples 'the constellation of benefits that the States have linked to marriage'" and reversed the judgment of the Arkansas Supreme Court. *Id*. at ___; 137 S Ct at 2077, quoting *Obergefell*, 576 US ___; 135 S Ct at 2601.

---

[2] This Court is bound to follow *Obergefell*, and as the majority points out, Michigan now recognizes the validity of same-sex marriage. *Stankevich v Milliron* (*On Remand*), 313 Mich App 233, 237, 240; 882 NW2d 194 (2015). However, in *Stankevich*, this Court was not presented with the issue that we are in this case, that being whether a provision of the CCA is unconstitutional as applied to plaintiff on due process and equal protection grounds where plaintiff was not able to enter into a legal same-sex marriage before *Obergefell*.

The Arkansas Supreme Court's decision, we conclude, denied married same-sex couples access to the "constellation of benefits that the Stat[e] ha[s] linked to marriage." *Obergefell*, 576 US at ___; 135 S Ct at 2601. As already explained, when a married woman in Arkansas conceives a child by means of artificial insemination, the State will—indeed, must—list the name of her male spouse on the child's birth certificate. See § 20–18–401(f)(1); see also § 9–10–201; *supra*, at 2077. And yet state law, as interpreted by the court below, allows Arkansas officials in those very same circumstances to omit a married woman's female spouse from her child's birth certificate. See 505 SW3d, at 177–178. *As a result, same-sex parents in Arkansas lack the same right as opposite-sex parents to be listed on a child's birth certificate, a document often used for important transactions like making medical decisions for a child or enrolling a child in school. See Pet. for Cert. 5–7 (listing situations in which a parent might be required to present a child's birth certificate).*

*Obergefell proscribes such disparate treatment. As we explained there, a State may not "exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." 576 US at —, 135 S Ct at 2605. Indeed, in listing those terms and conditions—the "rights, benefits, and responsibilities" to which same-sex couples, no less than opposite-sex couples, must have access—we expressly identified "birth and death certificates." Id. at —; 135 S Ct at 2601. That was no accident: Several of the plaintiffs in Obergefell challenged a State's refusal to recognize their same-sex spouses on their children's birth certificates. See DeBoer v Snyder, 772 F3d 388, 398–399 (CA 6, 2014). In considering those challenges, we held the relevant state laws unconstitutional to the extent they treated same-sex couples differently from opposite-sex couples. See 576 US at ___; 135 S Ct at 2605. That holding applies with equal force to* [Arkansas state statute] *§ 20–18–401.* [*Pavan*, 137 S Ct at 2078 (emphasis added).]

## III. EQUAL PROTECTION

In determining whether MCL 722.22(i) is unconstitutional as applied to plaintiff on equal protection and due process grounds, I start with the foundational principle that a statute will be presumed to be constitutional "unless the unconstitutionality is clearly apparent." *DeRose v DeRose*, 469 Mich 320, 326; 666 NW2d 636 (2003).

In *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318-319; 783 NW2d 695 (2010), the Michigan Supreme Court enunciated the applicable legal principles governing an equal protection challenge:

The equal protection clauses of the Michigan and United States constitutions provide that no person shall be denied the equal protection of the law. This Court has held that Michigan's equal protection provision is coextensive with the Equal Protection Clause of the United States Constitution. *The Equal Protection Clause requires that all persons similarly situated be treated alike under the law. When reviewing the validity of state legislation or*

*other official action that is challenged as denying equal protection, the threshold inquiry is whether plaintiff was treated differently from a similarly situated entity. The general rule is that legislation that treats similarly situated groups disparately is presumed valid and will be sustained if it passes the rational basis standard of review: that is, the classification drawn by the legislation is rationally related to a legitimate state interest. Under this deferential standard, the burden of showing a statute to be unconstitutional is on the challenging party, not on the party defending the statute[.]* [Footnotes, citations and quotation marks omitted; emphasis added.]

As a preliminary matter, plaintiff, on the basis of her sexual orientation, and as a former member of a same-sex partnership who was not permitted to marry her same-sex partner or adopt MEG following his birth, is receiving disparate treatment from an individual who does not share her sexual orientation, where under the CCA she cannot seek custody of and parenting time with MEG. Conversely, a former member of an opposite sex relationship that bore a child, even after the relationship ended, would be able to proceed under the CCA to seek custody of and parenting time with the child at issue where that individual carries a biological link to the child. The majority asserts that plaintiff has not suffered a violation of her right to equal protection under MCL 722.22(i), claiming that a male in an opposite sex relationship who does not carry a biological link with a child his female partner carried "could also meet the same fate as plaintiff[.]" "'To be considered similarly situated [for purposes of an equal protection analysis], the challenger and his comparators must be *prima facie* identical in all relevant respects or directly comparable . . . in all material respects.'" *Demski v Petlick*, 309 Mich App 404, 464; 873 NW2d 596 (2015), quoting *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013). In my view, the majority's conclusion that the male in an opposite sex relationship is similarly situated to plaintiff overlooks the key fact that, unlike the heterosexual male that the majority compares plaintiff to, plaintiff was in fact legally precluded from marrying her partner. Conversely, the heterosexual male subject of the majority's comparison, if he and his female partner deemed it appropriate, could not only have legally married, but the male individual could have in turn adopted the child. Plaintiff, before *Obergefell*, enjoyed no such privileges, and therefore the majority's claim that she and the male in an opposite sex relationship such as given in the majority's example are similarly situated is, in my view, not an appropriate analogy.

Further, even employing the more deferential of standards,[3] the rational basis standard of review, the classification that MCL 722.22(i) makes on the basis of sexual orientation must be "rationally related to a legitimate state interest." *Shepherd Montessori Ctr Milan*, 486 Mich at 318-319. In general, the CCA serves an important purpose for our state, in that it "standardiz[es] the criteria for resolving child custody disputes by requiring the circuit court to evaluate [several]

---

[3] In *Romer v Evans*, 517 US 620, 623, 631-632, 635; 116 S Ct 1620; 134 L Ed 2d 855 (1996), the United States Supreme Court employed the rational basis standard of review when considering an equal protection challenge to an amendment to Colorado's state constitution which "prohibit[ed] all legislative, executive or judicial action at any level of state or local government designed to protect" gays and lesbians.

factors in making its determination of the best interests of the child." *Bowie v Arder*, 441 Mich 23, 52; 490 NW2d 568 (1992). Put another way, "[i]t is clear that the act was intended to provide a framework for the resolution of disputes with regard to the custody of a child." *Id*. Specifically turning to MCL 722.22(i), by limiting the definition of parent, subsection (2)(i) presumably intends to ensure that those who seek to adjudicate matters of child custody and parenting time have a legal, valid and continuing relationship with the minor child at issue. However, I cannot conclude that the means employed, which involves specifically and unjustifiably excluding some individuals from the definition of parent on the basis of their sexual orientation, is rationally related to the state's interest, particularly in light of *Obergefell* and *Pavan*, where the United States Supreme Court has directed that benefits traditionally associated with marriage, such as child custody, parenting time and adoption, should no longer be unconstitutionally withheld from married same-sex couples. *Obergefell*, 576 US ___; 135 S Ct at 2604-2605; *Pavan*, ___ US ___; 137 S Ct at 2076-2077. Accordingly, I agree with plaintiff that by limiting the definition of parent in MCL 722.22(i) to a natural or adoptive parent, the legislation at issue violates plaintiff's right to equal protection under the law where she was legally prohibited from marrying her same-sex partner.

## IV. SUBSTANTIVE DUE PROCESS

In *AFT Mich v Michigan*, 497 Mich 197, 245; 866 NW2d 782 (2015), the Michigan Supreme Court recognized that "[t]he Michigan and United States Constitutions forbid the state from depriving any person of life, liberty, or property without due process of law."

Due process not only provides an individual with procedural protections, but also includes a "substantive" element where an individual will be protected against "the arbitrary exercise of governmental power." *Id*. Where a challenged law does not violate a "fundamental right[ ]," to succeed on a substantive due process claim, the plaintiff must establish that the law at issue is "not reasonably related to a legitimate governmental interest." *Id*. As the Michigan Supreme Court has cautioned, the initial inquiry in determining whether legislation violates an individual's substantive due process rights is "whether the interest allegedly infringed by the challenged government action[,] . . . comes within the definition of "life, liberty or property." *Bonner v Brighton*, 495 Mich 209, 225; 848 NW2d 380 (2014).

In *Washington v Glucksberg*, 521 US 702, 720; 117 S Ct 2258; 138 L Ed 2d 772 (1997), the United States Supreme Court highlighted some of the individual rights encompassed by the "'liberty' specially protected by the Due Process Clause." According to the *Washington* Court, these rights include the right to marry, to have children, and "to direct the education and upbringing of one's children." *Id*. (citations omitted.) Later, in *Troxel v Granville*, 530 US 57, 65-66; 120 S Ct 2054; 147 L Ed 2d 49 (2000), the United States Supreme Court canvassed the history of what it characterized as one of "the oldest . . . fundamental liberty interests recognized by [the United States Supreme Court][,]" the right of a parent to the care, custody and control of their child:

> The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in *Meyer v Nebraska*, 262 US 390, 399, 401; 43 S Ct 625; 67 L Ed 1042 (1923), we held that

the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v Society of Sisters*, 268 US 510, 534–535; 45 S Ct 571, 69 L Ed 1070 (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." We explained in *Pierce* that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id*. at 535; 45 S Ct 571. We returned to the subject in *Prince v Massachusetts*, 321 US 158; 64 S Ct 438; 88 L Ed 645 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Id*. at 166; 64 S Ct 438.

While the cases protecting a parent's fundamental liberty interest in the care and management of their own children have traditionally done so where the rights of natural parents are at issue, in *Obergefell* and *Pavan*, the United States Supreme Court expressly held that same-sex married couples should not be denied, either on equal protection or due process grounds, the right to marry, as well as concomitant benefits, including adoption, custody and parenting time. *Obergefell*, 576 US ___; 135 S Ct at 2604-2605; *Pavan*, ___ US ___; 137 S Ct at 2076-2077. While the Michigan Supreme Court has observed that "there has 'always been reluctan[ce] to expand the concept of substantive due process" and that judicial self-restraint must be undertaken when the parties ask that new ground be broken in this field[,]" *Bonner*, 495 Mich at 227, the ground has already been broken wide open by the United States Supreme Court. Specifically, in *Obergefell*, the United States Supreme Court discussed "four principles and traditions . . . [that] demonstrate that the reasons marriage is fundamental under the Constitution apply with equal force to same-sex couples." *Obergefell*, ___ US ___; 135 S Ct at 2599. One such basis, the Court opined "for protecting the right to marry is that it safeguards children and families and thus draws meaning from related rights of childrearing, procreation and education." *Id*. ___; 135 S Ct at 2600.

The majority opinion makes much of the fact that plaintiff did not legally marry defendant. This is correct, and therefore, to her detriment, and in a particularly cruel evolution of our nation's law, according to the majority the protections afforded by *Obergefell* simply pass plaintiff by. As noted above, plaintiff did not legally marry defendant because she was not permitted to do so before *Obergefell* was decided on June 26, 2015, although the parties agreed in a written contract that plaintiff would seek adoption of MEG, which was also unlawful for plaintiff pre-*Obergefell*. The majority essentially faults plaintiff for the failure to marry defendant, impliedly questioning why she did not travel to another state to legally marry defendant. I am aware that not all Americans are of financial means, and travelling to another state, while juggling the demands of parenthood and working outside of the home, may not have allowed for such travels. Additionally, what motivation did plaintiff and defendant have to make such an out-of-state excursion to legally marry in a state that recognized same-sex marriage before *Obergefell*, where Michigan would have refused to recognize the union? Under these circumstances, consistent with *Obergefell* and *Pavan*, I conclude that plaintiff has a fundamental

liberty interest in parenting MEG,[4] and that MCL 722.22(i)'s limitation of the definition of parent to a natural or adoptive parent post-*Obergefell* amounts to an arbitrary exercise of governmental power infringing on that right. *AFT Mich*, 497 Mich at 245. Accordingly, I agree with plaintiff that MCL 722.22(i) also violates her right to substantive due process.

## V. CONCLUSION

In my opinion, MCL 722.22(i) is unconstitutional in light of the United States Supreme Court's decisions in *Obergefell* and *Pavan*, where it violates plaintiff's rights to equal protection under the law and substantive due process. I would reverse the trial court's order granting summary disposition in favor of defendant and remand for further proceedings to allow (1) plaintiff to commence adoption proceedings and (2) the trial court to determine matters related to custody and parenting time as set forth in MCL 722.23, MCL 722.25, MCL 722.27 and MCL 722.27b.

/s/ Karen M. Fort Hood

---

[4] As the United States Supreme Court stated in *Obergefell*, the right to " 'marry, establish a home and bring up children' is a central part of the liberty protected by the Due Process Clause." *Obergefell*, ___ US ___; 135 S Ct at 2600, quoting *Zablocki v Redhail*, 434 US 374, 384; 98 S Ct 673; 54 L Ed 2d 618 (1978).