*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROLA KOLAILAT,

　　　　　Plaintiff-Appellant,

v

LINDSEY MCKENNETT,

　　　　　Defendant-Appellee.

UNPUBLISHED
April 14, 2022

No. 357248
Washtenaw Circuit Court
LC No. 21-000088-CZ

Before: RONAYNE KRAUSE, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, Rola Kolailat, appeals as of right the order granting summary disposition in favor of defendant, Lindsey McKennett, and prohibiting plaintiff from making future filings without first obtaining leave of the court. For the reasons set forth below, we affirm.

## I. BACKGROUND

There is a lengthy history of litigation between the parties to this appeal. In a prior civil suit between the parties, a panel of this Court described the parties' relationship as follows:

> [Kolailat] and [McKennett] were in a same-sex relationship between 2005 and 2014, but were never married. During that time frame, the couple decided to have a child, and [McKennett] underwent the process of being artificially inseminated with sperm from an anonymous donor. On February 5, 2010, [McKennett] gave birth to the minor child. While it appears that [Kolailat] helped raise the child and acted as her second parent, there is no dispute that she never adopted the child. Eventually, [Kolailat] and [McKennett] separated . . . . [*Kolailat v McKennett*, unpublished per curiam opinion of the Court of Appeals, issued December 17, 2015 (Docket No. 328333), p 1.]

In this most recent suit, plaintiff filed a complaint claiming that she was the owner of the sperm used to artificially inseminate defendant in 2010 because she allegedly paid for the sperm. In lieu of filing an answer, defendant moved for summary disposition under MCR 2.116(C)(7) and (8), and requested sanctions under MCR 1.109(E)(6). After a hearing on May 5, 2021, the trial

court granted the motion in full, reasoning that there was nothing "alleged [in plaintiff's complaint] that provides a cause of action," and ordering that plaintiff cannot file future pleadings or papers without first obtaining leave from the court. This appeal followed.

## II. SUMMARY DISPOSITION

Plaintiff first takes issue with the trial court's decision to grant defendant's motion for summary disposition.

## A. STANDARD OF REVIEW

"This Court . . . reviews de novo a trial court's decision on a motion for summary disposition." *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015). A motion under MCR 2.116(C)(7) is properly granted if, among other things, the action is barred by a prior judgment. A party may, but need not, support a motion under MCR 2.116(C)(7) with affidavits, depositions, admissions, or other documentary evidence. *Galea v FCA US LLC*, 323 Mich App 360, 368; 917 NW2d 694 (2018). For a motion under MCR 2.116(C)(7), if no documentary evidence contradicts an allegation in the complaint, the allegation is accepted as true. *Id*. For a motion under MCR 2.116(C)(8),

> [a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Dell*, 312 Mich App at 739-740 (citation omitted).]

"Conclusory statements, unsupported by factual allegations, are insufficient to state a cause of action." *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 272; 671 NW2d 125 (2003).

"[T]he application of legal doctrines, such as res judicata and collateral estoppel" are questions of law that are reviewed de novo. *Estes v Titus*, 481 Mich 573, 579; 751 NW2d 493 (2008). Questions of constitutional law are also reviewed de novo. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

## B. DISCUSSION

In plaintiff's first argument, she asserts that the trial court erred when it granted defendant's motion for summary disposition because, according to plaintiff, "[t]he law concerning sperm ownership is clear" that "human sperm constitutes property under the law." This assertion, however, fails to address the basis of the trial court's ruling—the court ruled that plaintiff failed to plead facts establishing a cause of action,[1] not that plaintiff could not own the at-issue sperm. In

---

[1] Plaintiff's entire complaint was two sentences long, stating, "Plaintiff paid for the sperm that caused [defendant] to be pregnant with [child]. Plaintiff is claiming ownership of the sperm that

-2-

other words, accepting as true plaintiff's assertion that sperm constitutes property that can be owned, it would not be a basis for disturbing the lower court's ruling.

On appeal, plaintiff disavows any notion that she is seeking compensation for allegedly paying for the sperm, stating, "Appellant is not asking for compensation . . . ."[2] Plaintiff also disavows that she is "asking for the sperm back." While plaintiff is clear about the relief she is *not* seeking, she is less clear about the relief she *is* seeking. Although it is unclear, we believe plaintiff is seeking a judgment declaring that she owns the sperm that was used to impregnate defendant because this will, according to plaintiff, grant her custody rights of the child born from the pregnancy.[3]

With this understanding of plaintiff's claim, the trial court was correct to dismiss plaintiff's complaint under MCR 2.116(C)(7) and (8). First addressing MCR 2.116(C)(8), the trial court correctly concluded that plaintiff fails to state a claim on which relief can be granted because she lacks standing to assert a claim for custody, which can only be accomplished under the Child Custody Act, MCL 722.21 *et seq.* (CCA), or the equitable-parent doctrine. With respect to the CCA, in a prior opinion involving the same parties addressing a similar issue, a panel of this Court explained why plaintiff lacked standing under that statute to seek custody:

> The trial court correctly determined that plaintiff lacked standing to initiate this child custody action. "Generally, in order to have standing, a party must merely show a substantial interest and a personal stake in the outcome of the controversy." *Altman v Nelson*, 197 Mich App 467, 475; 495 NW2d 826 (1992). "However, when the cause of action is created by statute, the plaintiff may be required to allege specific facts in order to have standing." *Id.* Here, the CCA confers standing to initiate child custody actions only upon certain persons; specifically, "parents," "agencies," or designated "third persons." See MCL 722.25(1); *Aichele v Hodge*, 259 Mich App 146, 165; 673 NW2d 452 (2003). [*Kolailat v McKennett*, unpublished per curiam opinion of the Court of Appeals, issued December 17, 2015 (Docket No. 328333), p 2.]

The same panel also explained why plaintiff lacked standing under the equitable-parent doctrine:

---

impregnated [defendant] with [child]." In dismissing the complaint, the trial court reasoned that allegedly paying for the sperm did not necessarily make plaintiff the owner of it.

[2] Even if plaintiff was seeking compensation for allegedly paying for the sperm, her claim would fail because she has not alleged facts to overcome the presumption that such a contribution to the relationship (i.e., paying for the sperm) was gratuitous. See *Featherston v Steinhoff*, 226 Mich App 584, 588-589; 575 NW2d 6 (1997).

[3] This is supported by statements made by plaintiff at the hearing on defendant's motion, where plaintiff asserted that her complaint was "a way that all non-biological lesbian[s] might be able to finally . . . see their children that they raised," and that she was "trying to see my children that I raised for ten years[.]" It is also tangentially supported by plaintiff's motion in the trial court to reassign the case to a different judge because "[t]his is a case about a custody issue . . . ."

If plaintiff were recognized as the child's equitable parent, she would be placed on "equal footing with any other natural or adoptive parent," *Soumis v Soumis*, 218 Mich App 27, 34; 553 NW2d 619 (1996), and would be entitled to proceed under the CCA "as a parent, rather than as a third person," *Van v Zahorik*, 460 Mich 320, 329; 597 NW2d 15 (1999). This Court recently extended the equitable parent doctrine to same-sex couples in light of the United States Supreme Court's decision in *Obergefell v Hodges*, [576 US 644]; 135 S Ct 2584; 192 L Ed 2d 609 (2015). *Stankevich v Milliron*, [313 Mich App 233; 882 NW2d 194] (2015).

However, our Supreme Court has held that "[b]y its terms, [the equitable parent] doctrine applies, upon divorce, with respect to a child born or conceived during the marriage." *Van*, 460 Mich at 330. Thus, where a child is not conceived or born within a marital relationship, the equitable parent doctrine is not applicable. *Id*.; *Killingbeck* [v *Killingbeck*, 269 Mich App 132, 141-142; 711 NW2d 759 (2005)]. In *Stankevich*, the Court acknowledged the *Van* Court's refusal to extend the equitable parent doctrine outside the context of marriage. *Stankevich*, [313 Mich App at 239]. Relying on *Van*, this Court held that, in attempting to establish standing pursuant to the equitable parent doctrine, a same-sex couple must prove the existence of valid marriage. *Id*. at [239-240].

In *Stankevich*, the parties were married in Canada before the birth of their child. *Id*. at [235]. Thus, the Court held that plaintiff had standing, and that the equitable parent doctrine would apply provided the elements were proven. *Id*. at [239-240]. In contrast, in the present case, the parties were never married. Accordingly, plaintiff lacks standing pursuant to *Van*. [*Kolailat v McKennett*, unpublished per curiam opinion of the Court of Appeals, issued December 17, 2015 (Docket No. 328333), p 2-3.]

Turning to the trial court's decision to dismiss plaintiff's complaint under MCR 2.116(C)(7), that decision was proper because the complaint is precluded by res judicata. "For res judicata to preclude a claim, three elements must be satisfied: (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 762 (2016) (quotation marks and citations omitted).

Clearly, plaintiff's claims for custody were already fully litigated between the parties in the prior action. To the extent that plaintiff's current claim—that her ownership of the sperm could give rise to custody rights—was not actually resolved in the prior action, res judicata still applies because the issue clearly could have been raised in the first action, which resolved plaintiff's custody-related claims.

In apparent anticipation of the preclusive effect this Court's prior opinions have on her current case, plaintiff appears to now argue that to deny her custody rights would violate her right to equal protection and due process under the United States Constitution. See US Const, Am XIV ("No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."). In essence, plaintiff claims that because her claim arose before she was able to legally marry (which she could

-4-

not do until *Obergefell*[4] was decided), she has been denied due process and equal protection of the law.

In *Lake v Putnam*, 316 Mich App 247; 894 NW2d 62 (2016), this Court addressed an argument similar to plaintiff's. In *Lake*, a partner of a same-sex couple sought parenting time of a child born by artificial insemination of the defendant. *Id.* at 249. The plaintiff argued that not applying the equitable-parent doctrine to her violated her right to equal protection and due process because refusing to do so would amount to treating her unfairly on the basis of her sexual orientation. *Id.* at 254-255. Rejecting this argument, this Court explained:

> [H]ad she been married to the child's biological parent, regardless of whether the biological parent was male or female, the outcome of this appeal would have been different. *Stankevich*, 313 Mich App at 237-240. But she was not. In fact, plaintiff has not presented any evidence to support a conclusion that she and defendant would have been married but for the law in Michigan (or in Florida, where the parties also resided for a period of time). Plaintiff has not provided any evidence reflecting the parties' intent to marry, the parties never made an effort to marry in another jurisdiction, the parties chose not to have plaintiff adopt the child in Florida despite being legally able to do so, and defendant adamantly denies that she would have ever married plaintiff even if legally able to do so. Furthermore, we, as well as our Supreme Court, have expressly chosen not to extend the equitable-parent doctrine beyond the context of marriage, *Bay Co Prosecutor v Nugent*, 276 Mich App 183, 191 n 2, 740 NW2d 678 (2007); *Van*, 460 Mich at 330-335, and to do so only for same-sex couples would be improper, *Kolailat v McKennett*, unpublished opinion per curiam of the Court of Appeals, issued December 17, 2015 (Docket No. 328333), pp 2-3 (declining to apply the equitable-parent doctrine to a same-sex couple after the *Obergefell* decision). [*Lake*, 316 Mich App at 255-256.]

In *Sheardown v Guastella*, 324 Mich App 251; 920 NW2d 172 (2018), this Court rejected a similar challenge to the CCA. In *Sheardown*, the plaintiff argued that the statute's application violated her right to equal protection and due process because she was in a same-sex relationship and could not marry until *Obergefell* was decided. *Id.* at 253-254. In rejecting that argument, this Court explained that "the liberty interest in the right to marry that was extended to same-sex couples in *Obergefell* simply does not come into play" because the plaintiff was never married to the defendant. *Sheardown*, 324 Mich App at 259-260. The Court further held that the plaintiff could not establish an equal-protection or due-process violation because the statute did not treat unmarried same-sex couples differently—the statue treated all unmarried couples the same. *Id.* at 260-261.

Like the parties in *Lake* and *Sheardown*, plaintiff and defendant in this case were never married. And, like in *Lake* and *Sheardown*, this is the reason that plaintiff cannot avail herself of the CCA or the equitable-parent doctrine. Contrary to plaintiff's argument, this does not violate plaintiff's rights to equal protection and due process for the reasons explained by this Court in

---

[4] *Obergefell v Hodges*, 576 US 644; 135 S Ct 2584; 192 L Ed 2d 609 (2015).

*Lake* and *Sheardown*. Accordingly, for this reason and the reasons previously articulated, we affirm the trial court's order granting summary disposition in defendant's favor.

## III. SANCTIONS

Plaintiff next asks this Court to lift the trial court's sanction prohibiting plaintiff from making future filings in the trial court without first seeking leave from the court.

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision to sanction a party under MCR 1.109(E) for clear error. *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 75; 903 NW2d 197 (2017). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Id*. at 75-76.

## B. DISCUSSION

As a preliminary matter, plaintiff's argument with respect to whether the trial court clearly erred when it sanctioned plaintiff is devoid of any legal authority in support of that position. As a result, plaintiff has abandoned her argument on appeal. See *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

Even if plaintiff's argument is not abandoned, the trial court did not clearly err by sanctioning plaintiff. Under MCL 600.2591(1), a civil action is considered frivolous if any of the following exist:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a)(*i*) through (*iii*).]

This Court's appellate record regarding the parties' numerous appeals demonstrates plaintiff's lengthy history of pursing often meritless legal filings against defendant. See, e.g., *McKennett v Kolailat*, unpublished order of the Court of Appeals, entered July 1, 2015 (Docket No. 327802) (dismissing claim of appeal for lack of jurisdiction after trial court denied Kolailat's motion to terminate personal protection order); *Kolailat v McKennett*, unpublished per curiam opinion of the Court of Appeals, issued December 17, 2015 (Docket No. 328333) (affirming trial court's order denying Kolailat's petition to be recognized as equitable parent); *McKennett v Kolailat*, unpublished order of the Court of Appeals, entered October 2, 2015 (Docket No. 328400) (denying Kolailat's delayed application for leave to appeal trial court's denial of motion to terminate personal protection order); *McKennett v Kolailat*, unpublished orders of the Court of Appeals, entered August 23, 2016 (Docket No. 333304) (denying Kolailat's application for leave

to appeal trial court's denial of motion to terminate personal protection order, subsequently amended to be a motion to modify personal protection order); *McKennett v Kolailat*, unpublished order of the Court of Appeals, entered November 1, 2016 (Docket No. 335134) (denying Kolailat's applications for leave to appeal trial court's denial of motion to terminate/modify personal protection orders); *McKennett v Kolailat*, unpublished order of the Court of Appeals, entered March 8, 2019 (Docket No. 345780) (denying Kolailat's delayed application for leave to appeal trial court's order holding Kolailat in criminal contempt); *Kolailat v McKennett*, unpublished order of the Court of Appeals, entered May 17, 2021 (Docket No. 356842) (denying Kolailat's application for leave to appeal trial court's order granting McKennett's motion for summary disposition).

Moreover, immediately before filing the present lawsuit, plaintiff filed a lawsuit in 2020 seeking restitution for her contributions during the relationship. That case was dismissed by the trial court for failure to state a claim upon which relief could be granted. A day before the order dismissing that case was even entered, plaintiff filed this lawsuit. With this lawsuit too, the trial court determined that plaintiff failed to state a claim against defendant. In light of this seemingly endless stream of legal filings against defendant, it was not clearly erroneous for the trial court to conclude that plaintiff's purpose in initiating these actions against defendant was to harass, embarrass, or injure her. See MCL 600.2591(3)(a)(*i*). Further, in light of plaintiff's numerous, often meritless complaints against defendant, the sanction imposed was appropriately tailored to balance plaintiff's right to pursue meritorious claims against defendant while preventing defendant from having to defend against meritless claims filed by plaintiff.

IV. CONCLUSION

Affirmed.

/s/ Amy Ronayne Krause
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien