*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ANTHONY B. CREWS,

      Plaintiff-Appellee,

v

APRIL CREWS,

      Defendant-Appellant.

UNPUBLISHED
October 10, 2019

No. 346440
Wayne Circuit Court
LC No. 13-110917-DM

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

In this custody dispute, defendant-mother appeals the trial court's opinion and order granting plaintiff-father's motion for sole legal and primary physical custody of the parties' two minor children. Defendant also challenges the trial court's prior orders finding that plaintiff had established proper cause and a change of circumstances warranting a review of the custody order, denying defendant's motion for reconsideration of that order, overruling defendant's objection to admission of certain evidence and denying defendant's motion to disqualify the trial judge. For the reasons stated in this opinion, we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed for divorce in 2013, beginning an acrimonious and litigious history between the parties. Throughout these proceedings, defendant sent irrational, angry, and concerning text messages to plaintiff—despite repeated court orders to communicate only through a computer program called Our Family Wizard. Further, the trial court found that defendant attempted to undermine plaintiff's relationship with the minor children by making unsubstantiated accusations of physical and sexual abuse against him, and of physical abuse and neglect against his mother, who regularly cared for the children. Because of those allegations, the minor children were subjected to a number of Kids Talk forensic interviews and visits from Child Protect Services (CPS) workers.

Originally, the parties reached an agreement regarding custody and parenting time, resulting in a consent judgment of divorce. Defendant and plaintiff were to share legal custody, while the children would primarily reside with defendant. Plaintiff received parenting time on

alternating weekends and Tuesdays. On several occasions after the judgment of divorce was entered, defendant unilaterally decided to withhold parenting time from plaintiff, citing allegations of abuse, none of which were substantiated. After a significant amount of litigation, the parties agreed to a modified parenting-time order in November 2017 that granted plaintiff an additional weekend of parenting time monthly.

The events that led to the instant appeal began in February 2018, when defendant again decided that she would stop plaintiff from exercising his parenting time. This time, defendant asserted that the children had been exposed to a dangerous situation when they were left with Tara Baldwin, plaintiff's girlfriend at the time. Specifically, defendant discovered that the children had been present in Baldwin's vehicle when she was assaulted by a family member. Defendant acted unilaterally, only later filing an emergency motion with the trial court to suspend plaintiff's parenting time until he agreed that the children would not be left in the care of Baldwin.

In response, plaintiff requested that the trial court deny defendant's motion and, further, to consider modifying the custody order and awarding him primary physical custody.[1] Plaintiff relied on defendant's repeated violation of court orders and the fact that the minor children had already missed a significant number of unexcused absences that school year. At a March 2013 evidentiary hearing regarding the motion, the trial court agreed with plaintiff, found proper cause and change of circumstances to review the prior custody order and set an evidentiary hearing regarding custody. The court also granted defendant's request that plaintiff not leave the children in Baldwin's care.

Defendant moved the trial court to reconsider its decision, arguing that plaintiff had never filed a written motion to modify custody and that he had not shown proper cause or a change of circumstances in his answer to her motion. The trial court denied reconsideration. Defendant then moved to disqualify the trial judge on the basis of bias or prejudice against defendant. The trial court denied that motion as well. On the first day of the custody hearing, defendant objected to plaintiff's use of evidence of events that occurred before the November 2017 order. The trial court overruled that objection, reasoning that the identified evidentiary restriction was inapplicable during the best-interest phase of a custody suit.

The evidentiary hearing on plaintiff's motion for sole custody spanned nearly three months and included six days of testimony. During that time, the court entered an ex parte temporary order limiting defendant's parenting time to weekends after defendant had sent plaintiff vindictive text messages stating that she was planning to withhold the oldest child from a summer program. Later, after defendant sent plaintiff text messages strongly indicating that she would not comply with the order limiting her parenting time, the trial court entered a second ex parte temporary order suspending defendant's parenting time, which was later modified to grant defendant supervised parenting time. Defendant also made new false police reports against

---

[1] Plaintiff would later request sole legal custody as well.

plaintiff during the pendency of the evidentiary hearing.[2]  In October 2018, the trial court issued a written opinion and order finding that the children had custodial environments with both parents and that by clear and convincing evidence the best interests of the minor children favored modifying the custody arrangement to provide plaintiff with sole legal and primary physical custody.  The court ordered that defendant, upon completion of 10 supervised parenting visits, would have the children every other weekend as well parenting time every Wednesday.  This appeal followed.

## II.  PROCEDURAL DUE PROCESS AND MOTION FOR RECONSIDERATION

Defendant first argues that the trial court violated her right to procedural due process by not requiring plaintiff to file a written motion expressly requesting a change of custody.  Relatedly, she also contends that the court abused its discretion by denying her motion for reconsideration in which she argued that plaintiff was required to file a written motion.  We disagree on both counts.[3]

"Due process is a flexible concept, the essence of which requires fundamental fairness." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009).  "[A]t a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014).

In response to defendant's motion to temporarily suspend his parenting time, plaintiff not only urged the trial court to deny the motion, but also requested that the court modify the custody order by giving him primary physical custody.  In support of that request, plaintiff alleged a myriad of issues involving defendant's parenting, including her repeated false allegations against plaintiff and the minor children's numerous unexcused absences from school.  In the section of plaintiff's response regarding the relief requested, plaintiff specifically requested that the trial

---

[2] Defendant also filed a complaint with this Court for a writ of superintending control.  We denied the writ and dismissed the case in an order. *In re Crews*, unpublished order of the Court of Appeals, entered September 27, 2018 (Docket No. 345313).

[3] A trial court's order resolving a child custody dispute "shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28.  "A trial court commits legal error when it incorrectly chooses, interprets, or applies the law." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014).  Generally, we review questions of constitutional law de novo. *Sheardown v Guastella*, 324 Mich App 251, 255; 920 NW2d 172 (2018).  But defendant did not raise the due-process argument before the trial court, so our review is for plain error affecting substantial rights. *In re BGP*, 320 Mich App 338, 342 n 6; 906 NW2d 228 (2017).  We review "a trial court's decision to deny a motion for reconsideration for an abuse of discretion." *American Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 709; 609 NW2d 607 (2000).

-3-

court "[d]etermine that it is in the best interest of the minor children for Plaintiff to provide the primary residence on behalf of the parties' minor children[.]"

Plaintiff filed that response on March 5, 2018, along with a proof of service. Defendant does not allege that she did not actually receive the response. Nor did she express any surprise at the hearing that the trial court was considering plaintiff's request. Indeed, defense counsel expressly referred to plaintiff's response at the March 13, 2018 hearing and made no objection to the court's consideration of plaintiff's request given the lack of written motion. Accordingly, we conclude that any complaint that defendant did not have fair notice or sufficient time to address the question of custody was waived at that time. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("[G]enerally a failure to timely raise an issue waives review of that issue on appeal.") (cleaned up).

Moreover, defense counsel had an opportunity to make arguments opposing plaintiff's request and the court questioned defendant at length regarding plaintiff's allegations, thus giving her an opportunity to respond. The record does not reveal any unfairness in the conduct of the hearing itself and notably defendant has not since that time made an argument or offered any evidence beyond that raised at the hearing. Thus, she has failed to establish plain error as to this unpreserved constitutional issue. *In re BGP*, 320 Mich App 338, 343; 906 NW2d 228 (2017).

We also reject defendant's argument that the trial court abused its discretion in denying her motion for reconsideration in which she raised the question of notice. Even assuming that the trial court erred by not requiring plaintiff to file a written motion, defendant's motion for reconsideration did not offer any basis to conclude that the substantive decision was incorrect and so did not demonstrate that "a different disposition of the motion must result from correction of the error" MCR 2.119(F)(3). Accordingly, the trial court did not abuse its discretion by denying the motion.

### III. PROPER CAUSE AND A CHANGE OF CIRCUMSTANCES

Defendant next argues that the trial court erred by finding proper cause and a change of circumstances that warranted revisiting the existing custody order. Again, we disagree.[4]

The Child Custody Act, MCL 722.21 *et seq.*, allows a trial court to "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances," as long as the modification would be in the child's best interests. MCL 722.27(1)(c). The goal of the provision "is to minimize unwarranted and disruptive changes of custody orders, except under the most compelling circumstances." *Corporan v Henton*, 282 Mich App 599, 603; 766

---

[4] We "review a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). A trial court's factual findings are against the great weight of the evidence when "the evidence clearly preponderates in the opposite direction." *Ireland v Smith*, 214 Mich App 235, 242; 542 NW2d 344 (1995), mod 451 Mich 457 (1996).

NW2d 903 (2009). "The movant has the burden of proving by a preponderance of the evidence that either proper cause or a change of circumstances exists." *Dailey v Kloenhamer*, 291 Mich App 660, 665; 811 NW2d 501 (2011).

"[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka v Grasmeyer*, 259 Mich App 499, 511; 675 NW2d 847 (2003). "[I]n order to establish a 'change of circumstances,' a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed." *Id*. at 513. To constitute a change of circumstances under MCL 722.27(1)(c), "the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514. The grounds for revisiting the prior custody order should be relevant to at least one of the best-interest factors. *Id*. at 511, 514.

In finding proper cause and a change circumstances, the trial court primarily relied on the exorbitant number of school absences the minor children had accrued in the months since the prior custody order. Plaintiff provided evidence that the children had 27 unexcused absences from school through February 2, 2018. Defendant asserts in her brief on appeal that this allegation was a "misrepresentation of the record," but she does not provide any record citation in support of that assertion. In any event, at the time of the hearing, defendant did not dispute that by then the children had 42 unexcused absences while in her care. Of particular interest to the court was that the children had recently missed 10 consecutive days of school. Defendant had only brought the children to the doctor on the last day of the extended absence at which time the doctor diagnosed one of children with "allergies with postnasal drip and chap lips."

Under those circumstances, the trial court did not err in finding that the children's unexcused absences justified a reevaluation of the last custody order. That change of circumstances related to best-interest factor (h), pertaining to the children's school record. MCL 722.23(h). Additionally, there was evidence that the change could have a significant effect on the children's education and lives. Plaintiff expressed concern regarding the children's ability to advance to the next grade because of the absences. Further, defendant was unable to offer an adequate explanation for the amount of absences, stating only that it was "a bad year" for the flu. The trial court was unconvinced: "You do not miss 42 days of school unless your children have been hospitalized."

Defendant also concedes that she violated the prior custody order six times by refusing to allow plaintiff to exercise his parenting time. Defendant's unilateral decision to withhold plaintiff's parenting time was directly relevant to factor (j), "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The most-recent withholding of parenting time pertained to the incident involving Baldwin. Notably, however, that incident did not involve an allegation of abuse against plaintiff. And there was ample reason to believe that defendant would continue to withhold parenting time from plaintiff as she saw fit.

Considering the totality of the evidence presented against defendant, the trial court's decision that there was a proper cause and a change of circumstances warranting a review of the prior custody order was not against the great weight of the evidence.

## IV. MOTION FOR DISQUALIFICATION

Defendant also contends that the trial court erred in denying the motion for disqualification. We disagree.[5]

Defendant moved for disqualification under MCR 2.003(C)(1)(a), which provides that disqualification is warranted if "[t]he judge is biased or prejudiced for or against a party or attorney." MCR 2.003(C)(1)(a). "A trial judge is presumed to be fair and impartial, and any litigant who would challenge this presumption bears a heavy burden to prove otherwise." *In re Susser Estate*, 254 Mich App 232, 237; 657 NW2d 147 (2002). "Opinions formed by a judge on the basis of facts introduced or events occurring during the course of the current proceedings, or of prior proceedings, do not constitute bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Schellenberg v Rochester Mich Lodge No 2225 of the Benevolent & Protective Order of Elks*, 228 Mich App 20, 39; 577 NW2d 163 (1998). Judicial remarks that are critical or disapproving of counsel or the parties generally does not support a claim of judicial bias. *Cain v Michigan Dep't of Corrections*, 451 Mich 470, 497 n 3; 548 NW2d 210 (1996).

During the hearing where the court found grounds to revisit the prior custody order, plaintiff's attorney presented evidence that defendant sent her veiled threats. The trial judge stated on the record that it would have obtained a personal protection order (PPO) if it had received similar messages. The messages also prompted the judge to ask defendant if she had ever had a psychiatric evaluation. Defendant contends that those comments by the judge exhibited bias requiring reversal.

As noted, the trial judge became aware of defendant's communications to plaintiff's counsel during a motion hearing. In the subject messages, defendant called counsel a hypocrite, recounted a biblical story that referred to hypocrites as being "wicked," and quoted scripture, "I am the righteousness of God."[6] Thus, the judge's alleged biased opinion of defendant was

---

[5] "When this Court reviews a motion to disqualify a judge, the trial court's findings of fact are reviewed for an abuse of discretion; however, the applicability of the facts to relevant law is reviewed de novo." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 596; 640 NW2d 321 (2001). "An abuse of discretion occurs when the decision is outside the range of reasonable and principled outcomes." *Butler v Simmons-Butler*, 308 Mich App 195, 226; 863 NW2d 677 (2014).

[6] At a later date, defendant sent plaintiff a text message stating that [t]he wrath of God is coming to you swiftly." In that same message, defendant wrote: "I will pray for you, your attorney and the judge. You all dont [sic] even realize that you are being used b[y] satan himself. Sadly, at the end of the day, when satan is done, he is going to destroy."

formed on the basis of information produced during the proceedings and therefore cannot be grounds for disqualification unless the judge displayed "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Schellenberg*, 228 Mich App at 39. There is nothing in the record to suggest that the judge had a deep-seated favoritism toward plaintiff or antagonism against defendant. Indeed, even after making those comments, the judge granted defendant the relief she sought in the motion—barring plaintiff from leaving the children in Baldwin's care. That can hardly be described as entrenched antagonism.

Moreover, the judge's comments regarding defendant's psychiatric condition were related to the judge's ruling. The judge was considering whether there was proper cause or a change of circumstances warranting a review of the prior custody order. As noted, courts should consider the best-interest factors in making that determination. *Vodvarka*, 259 Mich App at 511, 514. And a trial court is required to weigh the parents' mental health as part of factor (g). MCL 722.23(g). Consequently, the judge's statement pertained to her ruling, which, "in and of themselves, almost never constitute a valid basis for" finding a judge to be biased. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001). For those reasons, defendant has not overcome the strong presumption that the judge was fair and impartial.

## V. EVIDENTIARY RULING

Next, defendant argues the trial court erred in considering evidence predating the existing custody order in analyzing the best-interest factors. We disagree.[7]

A party seeking to modify a custody order on the grounds of change of circumstances must show that the change occurred since the entry of the last custody order. *Vodvarka*, 259 Mich App at 513. Defendant does not provide any authority—and we are aware of none—holding that once that threshold has been met, the court may only consider evidence postdating the prior order in evaluating the best-interest factors. Defendant relies on *Thompson v Thompson*, 261 Mich App 353, 356-357; 683 NW2d 250 (2004), in which we held in part that a trial court is not so confined when evaluating the child's best interests after the issuance of a temporary custody order. Defendant argues that the implication of *Thompson* is that when there is a permanent custody order, then the court may only consider subsequent evidence in reevaluating the custody decision. To the contrary, however, the *Thompson* Court reasoned that "[w]hen considering the best interest factors, the trial court must consider all pertinent and relevant factors on the record as it stands at the time of hearing." *Id*. at 357 (quotation marks and citations omitted). Thus, we do not read *Thompson* as supporting defendant's position. Rather, the case stands for the proposition that trial courts should consider all relevant evidence when determining the child's best interests. Accordingly, the trial court did not abuse its discretion in denying defendant's objection to evidence regarding events that occurred before the last custody order.

## VI. BEST-INTEREST FACTORS

---

[7] We review evidentiary rulings for an abuse of discretion. *Thompson v Thompson*, 261 Mich App 353, 355; 683 NW2d 250 (2004).

Finally, defendant argues that the trial court's factual findings as to the best-interest factors were against the great weight of the evidence. Finding no error, we affirm.[8]

Because there was an established custodial environment with both parents, plaintiff bore the burden of proving by clear and convincing evidence that modification of custody was in the children's best interests. MCL 722.27(1)(c); *Dailey v Kloenhamer*, 291 Mich App 660, 667; 811 NW2d 501 (2011). MCL 722.23 defines the " 'best interests of the child' " as "the sum total of the" factors set forth in MCL 722.23(a)-(*l*). "In child custody cases, the family court must consider all the factors delineated in MCL 722.23 and explicitly state its findings and conclusions with respect to each of them." *Spires v Bergman*, 276 Mich App 432, 443; 741 NW2d 523 (2007).

The trial court first determined that factor (a), "[t]he love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a), slightly favored plaintiff. The court found that the children's "mental and emotion health" had been damaged by defendant's actions against plaintiff, i.e., the repeated unsubstantiated allegations of abuse and unilaterally withholding plaintiff's parenting time, and that "they are at further risk of harm from any continued exposure to the same." Defendant argues that this finding was erroneous because there was no evidence from a therapist or other professional that the children had been damaged by her actions. It was reasonable for the trial court to infer, however, that the numerous unsubstantiated police and CPS reports made by defendant adversely affected the children. Those reports caused to children undergo Kids Talk forensic interviews and questioning from CPS works on multiple occasions. The last known incident of defendant making false reports occurred on July 22, 2018, when she brought both children with her to the police station so that she and Baldwin could issue a complaint that plaintiff would make the children stand naked in his presence and make them watch him perform sex acts on Baldwin. Baldwin later testified that these were false allegations and knowingly false at the time they were made to the police. Given all of this, the trial court's finding on this factor was not against the great weight of the evidence.

For similar reasons, the court also found that plaintiff was favored under factor (b), "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). Defendant argues that the court failed to consider that she was primarily involved in the children's academic life, engaged in church activities with the children and facilitated medical visits for them. Although the court's opinion did not reference the evidence cited by defendant, that does not mean the trial court did not consider it. Rather, it is implied that the trial court simply found defendant's actions regarding the incessant abuse investigations to be the most telling evidence of defendant's ability to provide guidance to the minor children. See

---

[8] "[A] court's ultimate finding regarding a particular [best-interest] factor is a factual finding that can be set aside if it is against the great weight of the evidence." *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994). A trial court's factual finding is against the great weight of evidence when "the evidence clearly preponderates in the opposite direction." *Ireland*, 214 Mich App at 242.

*MacIntyre v MacIntyre*, 267 Mich App 449, 452; 705 NW2d 144 (2005) (explaining that the trial court's "findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties."). Specifically, plaintiff introduced evidence that defendant attempted to use police and CPS investigations as a tool to undermine his relationship with his children. In doing so, defendant exhibited the inability or refusal to provide appropriate guidance to the minor children. For those reasons, the court's finding that factor (b) favored plaintiff was not against the great weight of the evidence.

The trial court next found that the parties were favored equally under factor (c), "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The court found that both parties were employed and had taken the children to medical appointments as needed and that plaintiff provided the medical insurance for the children. Defendant argues that the court ignored that she was the primary person to bring the children to their medical appointments. Even assuming that is true, it is presumably a function of defendant being the children's primary residence for the majority of these proceedings, and thus does not preponderate against the court's finding as to the parents' capacity and disposition to provide care. Defendant also argues that the court failed to consider that plaintiff had allowed Baldwin to care for the children. That contention rings hollow, however, because after plaintiff's relationship with Baldwin ended, defendant struck up a relationship with Baldwin and permitted her to spend time with the children. Accordingly, defendant has not shown that the evidence clearly preponderates against the court's finding that factor (c) was neutral.

The court next determined that plaintiff was favored under factor (d), "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The court noted that a CPS worker testified that the children appeared happier and more outgoing since they began residing exclusively with plaintiff in July 2018. Defendant argues that the trial court erred by failing to consider evidence that plaintiff's house was determined to be inappropriate during a previous CPS investigation because of the presence of a snow blower and mouse droppings and that plaintiff lived in an unsafe neighborhood. Although plaintiff admitted to having a snow blower and pests in his house at one point, he testified that he had cleaned up. Indeed, a CPS visited plaintiff's home in September 2018 and did not report any issues. Also, while defendant testified that plaintiff's neighborhood was dangerous, plaintiff testified that it was safe. The trial court explicitly found that plaintiff's testimony was credible and defendant's was not credible. And in reviewing the court's findings, we defer to its credibility determinations. *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008). Therefore, the court's finding that this factor weighed in favor of plaintiff was not against the great weight of the evidence.

The court found that neither party was favored under factor (e), "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). Defendant argues that the trial court failed to consider her testimony that plaintiff goes to strip clubs and brings women home to care for the children. Plaintiff was previously in a relationship with Baldwin, who works as an exotic dancer, but he testified at the hearing that he was not currently in a dating relationship. Thus, having specifically found plaintiff's testimony credible, the court likely believed that plaintiff was not bringing random women home from clubs to care for the

children. Moreover, the court also noted that defendant began her own relationship with Baldwin and ignored a court order by allowing the children to be home alone with her adult son. The court weighed the facts and determined that the parties' issues at home were equally problematic. As such, the record supports the trial court's finding that this factor did not weigh in either party's favor, and therefore that finding was not against the great weight of the evidence.

The court found that plaintiff was favored under factor (f), "[t]he moral fitness of the parties involved." MCL 722.23(f). The trial court did not have any concerns regarding plaintiff's moral fitness, but found that "the evidence demonstrated a concerted and unwavering effort" by defendant to "destroy" plaintiff's parental role at the expense of the children's best interests. Defendant argues that the court failed to consider evidence that plaintiff called defendant inappropriate names in text messages, engaged in a relationship with Baldwin, and was physically abusive to his children. Although plaintiff admitted to calling defendant inappropriate names, he apologized for doing so and admitted that he was wrong. Further, plaintiff testified that he ended his relationship with Baldwin. And the court likely disregarded defendant's allegations of physical abuse by plaintiff, given that CPS repeatedly determined that they were unsubstantiated. Accordingly, defendant has not shown that the court's finding on factor (f) clearly preponderated against the evidence.

The court determined that neither party was favored under factor (g), "[t]he mental and physical health of the parties involved." MCL 722.23(g). Defendant's argument that the trial court failed to consider that plaintiff has dyslexia is without merit; the court expressly addressed that fact and noted plaintiff's testimony that his diagnosis helps him assist the oldest child with her learning disabilities. Defendant also contends that the trial court improperly suggested that she may have a mental health impairment. While the court noted that defendant's behavior suggested that possibility, it was quick to note that there was not substantiating evidence on that matter. So defendant fails to establish that the court's finding that this was a neutral factor was against the great weight of the evidence.

Next, the court found that plaintiff was favored under factor (h), "[t]he home, school, and community record of the child." MCL 722.23(h). The court explained that the oldest child, who has an Individualized Educational Plan and requires special academic attention, had not attended summer school in previous years contrary to school officials' recommendations to defendant. The court found that when defendant did enroll the child in a summer program, she attempted to withhold the child's enrollment in an attempt to "punish" plaintiff; plaintiff then filed emergency motions to ensure the child's attendance. The child completed the program and was awarded a certificate for "most improved student." The court also focused on the children's excessive school absences while in defendant's care and defendant's lack of convincing explanation for the number of absences.

Defendant first argues that the trial court failed to consider that her testimony that her actions pertaining to the summer program were due to her concern regarding the appropriateness of the program, not an attempt to punish plaintiff. However, defendant's text messages regarding the program, which used a vindictive tone and asserted that she was only following the shared legal custody rules, belies her testimony. Thus, the trial court's finding that defendant was willing to deny the child an educational opportunity as a way to punish plaintiff was not

against the great weight of the evidence. Defendant also argues that the trial court over-valued the children's absences, citing testimony from the oldest child's teacher that she did not believe that the child's education significantly suffered because of the absences. Still, the teacher testified that it is important for a child to be in class and that he or she miss a lot of instruction when absent. In any event, the number of absences and the lack of an adequate explanation from defendant supported the trial court's finding that this factor weighed in plaintiff's favor. For those reasons, the court's finding was not against the great weight of the evidence.

The court noted that it had considered the children's preferences under MCL 722.23(i), but did not find that the factor favored either party. Defendant does not challenge that determination on appeal.

The court then found that factor (j), "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents," MCL 722.23(j), strongly favored plaintiff. The court found that plaintiff had demonstrated an ability and willingness to foster a relationship between the children and defendant and that he understood the importance of that relationship. While defendant also testified to that effect, the court found that her "actions demonstrate the complete opposite." On appeal, defendant merely argues that the she withheld parenting time from plaintiff after the violent incident involving Baldwin because she was concerned for the children's safety. However, this wholly ignores defendant's long history of making unsubstantiated claims against plaintiff and his mother. Thus, defendant's argument on this factor is without merit.

The court determined that the neither party was favored under factor (k), relating to domestic violence. MCL 722.23(k). Defendant contends that this factor actually weighed in her favor. She cites the court's failure to consider that plaintiff admitted to a domestic-violence arrest, having an altercation with Baldwin, and punching a hole in the wall. Contrary to defendant's argument, the court did consider that plaintiff was charged for domestic violence, but properly relied on the lack of evidence regarding the outcome of that case, noting defendant's and plaintiff's contradictory testimony. As to his altercation with Baldwin and the hole in the wall, plaintiff did not admit in either case that he committed domestic violence. Therefore, the court did not err in declining to consider that evidence. Defendant also asserts that the court failed to credit evidence that plaintiff physically abused his children. Again, the claims that plaintiff abused the children were unsubstantiated. In 2013, plaintiff admitted to CPS that he slapped his daughter from a different relationship on one occasion; the daughter confirmed this and told CPS that she felt safe in plaintiff's presence. This one incident, occurring years ago with a different child, does not clearly preponderate against the court's finding that this was a neutral factor.

Finally, as to factor (*l*) (any other relevant factor), MCL 722.23(*l*), the court stated:

> The Court has deeply considered the repeated, unfounded CPS and police complaints by Defendant Mother, as well as Defendant Mother's violations of Court Orders and the effect that those issues have had and will continue to have on the minor children's emotional and psychological well-being. The Court has

further considered the risks of the tumultuous co-parenting dynamic upon the minor children.

The court did not include a conclusion regarding whether the factor weighed in either party's favor, but the reasoning clearly indicates that the factor favored plaintiff. Defendant only argues that the court erred by not considering her objection to plaintiff's mother watching the children without a court order in place governing grandparenting time. We fail to see how this objection had any relevance to the court's determination of the children's best interests.

In sum, the trial court's findings that factors (a), (b), (d), (f), (h), (j), and (*l*), weighed in plaintiff's favor were not against the great weight of the evidence. The same is true for the court's findings that factors (c), (e), (g), and (k), did not favor either party. Considering that seven factors weighed in favor of plaintiff, while four of the factors were either neutral or inapplicable, the trial court did not commit reversible error in determining that plaintiff established by clear and convincing evidence that he should be granted sole legal and primary physical custody.

Affirmed.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Douglas B. Shapiro